Nathaniel TAYLOR, III, Appellant.

v.

The STATE of Texas, State.

No. 2–97–269–CR.

Court of Appeals of Texas,
Fort Worth.

May 14, 1998.

Discretionary Review Refused
Sept. 16, 1998.

Elizabeth A. Berry, Fort Worth, for Appellant.

Tim Curry, Crim., Dist. Atty., Charles M. Mallin, Asst. Dist. Atty. and Chief of the Appellate Division, Helena F. Faulkner, Barry Shelton, Fred Cummings, Asst. Dist. Attys., Fort Worth, for Appellee.

CAYCE, C.J., and DAY and HOLMAN, JJ.

## OPINION

CAYCE, Chief Justice.

Nathaniel Taylor, III was convicted of aggravated robbery and sentenced to fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In nine points, appellant contends the trial court erred in overruling his objection to the State's alleged improper jury argument, in failing to include an application paragraph in the punishment charge regarding extraneous offenses, and in admitting evidence of two extraneous offenses during the punishment phase. We will affirm.

At approximately 10:00 p.m. on June 4, 1996, Dena Kendall drove onto the premises of a storage unit facility. Her friend, Karen Paul, was seated in the passenger seat. Kendall got out of the car and went inside the building momentarily. When she returned to her car, she and Paul saw a man wearing a blue bandanna across his face approach the driver's side of the car. The man placed a shotgun to Kendall's head and demanded her purse, watch, necklace, and cellular phone and then forced Kendall out of the car and ordered her to lie face down on the concrete. Simultaneously, another man approached the passenger side of the car, held a gun to Paul's head, and demanded her jewelry and cash. Paul was also forced out of the car and ordered to lie face down on the concrete while the men fled.

Several days after the robbery, Kendall positively identified appellant as the person who robbed her. Appellant was arrested and confessed to committing the offense, as well as eleven other aggravated robberies over a period of several days.

On August 29, 1996, a grand jury indicted appellant for the aggravated robberies of Kendall and Paul. Appellant entered a plea of not guilty and a jury trial commenced on February 11, 1997. The jury found appellant guilty and a punishment proceeding began on February 12th.

During the punishment proceeding evidence of appellant's participation in six other extraneous offenses was admitted. Brandon Lamb testified that, at approximately 4:30 a.m. on June 3, 1996, a man confronted him at gunpoint while he was washing his 1992 GMC Yukon at an Arlington car wash. Lamb attempted to run away, but a second assailant, behind him, blocked his escape. The men ordered Lamb to lie on the ground, placed a gun to Lamb's head, and demanded his wallet and keys and emptied Lamb's pockets. The men then escaped in Lamb's truck, almost running over Lamb in the process.

Florisa Rodriguez testified that, at about 9:30 p.m. on June 4, 1996, she was parked in

front of a friend's house when a man with a bandanna over his face approached her, pointed a shotgun at the side of her head, and demanded her money. When she told the attacker that she did not have any money he fled.

Hildred Pepper testified that, at about 9:30 p.m. on June 4, 1996, a man wearing a bandanna over his face entered his garage with a shotgun, placed the shotgun in Pepper's face, and demanded his money and his car keys. Pepper complied, was forced out of his car, and ordered to lie face down at the end of his garage on the driveway. He noticed a sport utility truck parked in the driveway and another man standing beside the truck holding a handgun. The man with the shotgun stole Pepper's Lexus.

Jamie Anderson Babers testified that, at about 10:00 p.m. on June 4, 1996, as she approached the door to her house, a Lexus pulled into her driveway, a man got out and ordered her to "[l]ay down, lay down now." She complied because she thought he had a gun. While being accosted, Babers dropped her purse, the man picked it up, and then left.

Finally, R.L.G. testified that, at about 3:00 a.m. on June 2, 1996, she was walking along I–30 when a small black car "cut her off," a front-seat passenger pointed a gun at her and ordered her into the car while the back-seat passenger pulled her by the arm into the car. She was subsequently forced to perform oral sex on one of her kidnappers while another one, simultaneously, forced her to have vaginal sex with him. The third assailant foraged through her purse. R.L.G. positively identified appellant as the man who forced her to perform oral sex on him.

Appellant testified on his own behalf at the punishment proceeding and admitted his guilt in the charged offenses against Kendall and Paul, as well as his participation in the four aggravated robberies against Lamb, Rodriguez, Pepper, and Babers. He also admitted that he was the driver of the car in the attack on R.L.G. and that he drove to a secluded place because Larry Chambers, his co-defendant, "said he wanted to F her." He denied, however, forcing R.L.G. to perform oral sex on him. Rather, he contended that

R.L.G. consensually performed oral sex on him while being forced to engage in vaginal sex with Chambers.

■ In appellant's first point, he contends the trial court erred in overruling his objection to the State's alleged improper jury argument during the guilt/innocence phase of the trial. Specifically, he asserts the State improperly commented on appellant's failure to testify when it made the following comment:

> But what did he do? No. He ran up there and, just like his buddy, he pointed a weapon, a firearm, at the head of a lady. He forced her out of that car. He forced her onto the ground. And I guess *there is no complaint as to that testimony*, that he held a gun to her head and said, "Don't look at me, don't look at me or I'll shoot." [Emphasis supplied.]

■ It is well-settled that when an accused testifies during the punishment phase of a trial and admits his guilt to the charged offense that he waives all nonjurisdictional error that may have arisen during the guilt/innocence proceeding, including alleged improper jury arguments. *See McGlothlin v. State*, 896 S.W.2d 183, 189 (Tex.Crim. App.), *cert. denied*, 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995); *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex.Crim.App.), *cert. denied*, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985); *Barrett v. State*, 900 S.W.2d 748, 751 (Tex.App.—Tyler 1995, pet. ref'd); *Tyson v. State*, 857 S.W.2d 697, 699 (Tex.App.—Houston [14th Dist.] 1993, no pet.). Because appellant admitted his guilt at the punishment proceeding, we find that he waived any alleged error during the State's closing argument. *See DeGarmo*, 691 S.W.2d at 661. Appellant's first point is overruled.

■ In his second through seventh points, appellant argues that the trial court erred in failing to submit an application paragraph in the punishment charge applying the law to the facts of each extraneous offense admitted. At the charge conference, appellant's counsel requested

*an application paragraph charge on each of the extraneous offenses* that was admitted in the punishment stage of the trial and instruct [the jury] that if they believe from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on that particular day, the Defendant did commit that offense against that person, then they can consider that in assessing the punishment in the case.... [Emphasis supplied.]

However, the trial court charged the jury as follows:

The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. Said evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider said testimony for any purpose *unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed.* [Emphasis supplied.]

The State contends that, because the jury is not required to find beyond a reasonable doubt that the accused committed every statutory element of an extraneous offense, an application paragraph setting out each element of the extraneous offenses was not required to properly instruct the jury regarding the State's burden of proof. We agree.

█ Article 37.07, section 3(a) provides:

Sec. 3. (a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible,* regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.1998) (emphasis supplied). When extraneous offense evidence is admitted during the punishment phase of a trial, the trial court must instruct a jury, upon request, not to consider the evidence unless it believes beyond a reasonable doubt that the defendant committed the offense. *See Mitchell v. State,* 931 S.W.2d 950, 954 (Tex. Crim.App.1996). However, there is no requirement that the jury be instructed that it can only find the commission of an extraneous offense if the State proves each and every element beyond a reasonable doubt. *See Smith v. State,* 959 S.W.2d 1, 28 (Tex. App.—Waco 1997, pet. ref'd); *Norrid v. State,* 925 S.W.2d 342, 349 (Tex.App.—Fort Worth 1996, no pet.).

In *Spence v. State,* 795 S.W.2d 743 (Tex. Crim.App.1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991), the court of criminal appeals addressed this issue in the context of a capital murder trial. In that case, the court held that extraneous offense evidence could be considered by a jury in determining the defendant's punishment, even though the State was incapable of proving all the elements of the alleged extraneous offense.[1] *See id.* at 759. The court stated:

There is ... no requirement in our law that all of the statutory elements of an offense must be proven before a prior unadjudicated extraneous offense may be admitted at the punishment phase of a capital murder trial.

1. Article 37.071 governs the admissibility of extraneous offense evidence during the punishment phase of capital murder trials. Like article 37.07, section 3(a), article 37.071 provides that all relevant evidence may be admitted at the punishment phase of a capital murder trial, including evidence of unadjudicated extraneous offenses. *See* Tex.Code Crim. Proc. Ann. art. 37.071 (Vernon Supp.1998); *Spence,* 795 S.W.2d at 759; *Quinones v. State,* 592 S.W.2d 933, 945 (Tex. Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).

*See id.*[2]   If the State does not carry the burden of proving beyond a reasonable doubt each and every element of an extraneous offense in capital cases, we are disinclined to impose such a burden on the State in other cases.

■ We hold that the instruction submitted in this case ordering the jury not to consider the extraneous offense evidence unless it "believe[d] beyond a reasonable doubt that the defendant committed such other acts, if any were committed," sufficiently complied with the mandates of articles 37.07, section 3(a) and (b) and 36.14. *See Mitchell,* 931 S.W.2d at 954. We find no error in the trial court's refusal to submit appellant's requested instruction.[3] Appellant's second through seventh points are overruled.

In his eighth and ninth points, appellant contends the trial court erred in admitting into evidence R.L.G.'s testimony because the evidence about the aggravated sexual assault and kidnaping was irrelevant to the State's theory that appellant was a "serial aggravated robber."

■ When reviewing a trial court's decision to admit or to exclude evidence, an appellate court "must afford a trial court great discretion in its evidentiary decisions." *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App.1990); *see Mitchell,* 931 S.W.2d at 953. Appellate courts recognize that the trial judge is "in a superior position to evaluate the impact of the evidence." *Montgomery,* 810 S.W.2d at 379; *Bisby v. State,* 907 S.W.2d 949, 953 (Tex.App.—Fort Worth 1995, pet. ref'd). Thus, an appellate court should not overturn such a trial court ruling absent a clear abuse of discretion. *See Montgomery,* 810 S.W.2d at 380; *Bisby,* 907 S.W.2d at 953.

■ Article 37.07, section 3(a) provides that "evidence may be offered ... as to any matter the court deems *relevant* to sentencing." TEX.CODE CRIM. PROC. ANN. art. 37.07,

§ 3(a) (emphasis supplied). The material issue in a punishment proceeding is what punishment to assess. *See Miller–El v. State,* 782 S.W.2d 892, 896 (Tex.Crim.App.1990); *Murphy v. State,* 777 S.W.2d 44, 62 (Tex. Crim.App.1989) (op. on reh'g). In a noncapital felony case, there are no discreet fact issues for the fact finder to determine, therefore, what is "relevant" in assessing proper punishment is more a question of policy than of logical relevance. *See Murphy,* 777 S.W.2d at 63. However, the circumstances of the offense and of the offender are "relevant" and are appropriate information for the fact finder to consider in exercising its unfettered discretion to assess punishment within the prescribed range it sees fit. *See id.; Stiehl v. State,* 585 S.W.2d 716, 718 (Tex. Crim.App. [Panel Op.] 1979), *cert. denied,* 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981).

■ In this case, we find that evidence of appellant's participation in the aggravated sexual assault and kidnaping of R.L.G. was "relevant" information about the circumstances of the defendant. Specifically, R.L.G.'s testimony assisted the jury in understanding appellant's criminal behavior during the three-day crime spree thereby providing the jury with the most information possible to consider in determining his punishment. *See Murphy,* 777 S.W.2d at 63 (citing *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949)).

■ Additionally, we note that a plain reading of article 37.07, section 3(a) does not invoke the restriction that appellant invites us to apply. Appellant cites no authority, nor have we found any, to support a holding restricting the admissibility of extraneous offense evidence during the punishment phase to offenses or acts similar in nature to the charged offense. To the contrary, the plain

---

**2.** Adoption of appellant's interpretation of articles 37.07, section 3 and 36.14 of the Code of Criminal Procedure would yield the untenable and illogical result of placing a higher evidentiary burden on the State in punishment proceedings of noncapital cases than the burden it has in capital cases and on guilt/innocence. *See*

*Spence,* 795 S.W.2d at 759; *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App.1994).

**3.** Appellant's reliance upon *Williams v. State,* 547 S.W.2d 18 (Tex.Crim.App.1977) is misplaced. *Williams* involved a guilt/innocence charge. *See id.* at 18.

language of the statute supports a broad interpretation in favor of the admissibility of all relevant extraneous offense evidence, unless the probative value of the evidence is substantially outweighed by its prejudicial effect. *See Muhammad v. State,* 911 S.W.2d 823, 827–28 (Tex.App.—Texarkana 1995, no pet.); *Babers v. State,* 834 S.W.2d 467, 469 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Smith v. State,* 899 S.W.2d 31, 34 (Tex.App.—Austin 1995, pet. ref'd); *see also Tow v. State,* 953 S.W.2d 546, 547–48 (Tex. App.—Fort Worth 1997, no pet.). Although appellant asserts that, in this case, the prejudicial effect of R.L.G.'s testimony overpowered its probative value, nothing in the record or in appellant's brief supports such a finding. As a result, we find that the trial court's decision to admit R.L.G.'s testimony fell within the realm of reasonable disagreement and was, therefore, not an abuse of discretion. We overrule appellant's eighth and ninth points.

The judgment of the trial court is affirmed.