# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00419-CR

**Reo Dell Wright, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 56382, HONORABLE JOE CARROLL, JUDGE PRESIDING

## O P I N I O N

Appellant Reo Dell Wright appeals his conviction for aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. § 22.021 (West Supp. 2005). The jury found appellant guilty and assessed his punishment at thirty-six years' imprisonment.

## POINTS OF ERROR

Appellant advances two interrelated points of error. Appellant contends that the trial court committed egregious harm by failing to *sua sponte* include a jury instruction on the burden of proof as to the extraneous offenses (1) in the penalty stage of the trial and (2) earlier in the guilt-innocence stage of the trial. These jury charge issues relate only to two extraneous evidence matters introduced at the guilt-innocence stage of the trial. At neither stage of the trial did appellant request the desired jury instruction or object to its omission. Appellant principally relies upon *Huizar v. State,* 12 S.W.3d 479 (Tex. Crim. App. 2000) and its interpretation of article 37.07, section 3(a)(1).

(Tex. Code Crim. Proc. Ann art. 37.07. § 3(a)(1) (West 2006).[1]  One extraneous unadjudicated offense involving the possession and use of crack cocaine was elicited by appellant.[2]  The other "bad act" evidence did not in fact reveal misconduct by appellant.  Appellant insists that he was entitled in this non-capital case to a *sua sponte* instruction at each stage of the trial that jurors were not to consider the unadjudicated extraneous offense or bad act evidence on the issue of punishment unless they first find that the State proved beyond a reasonable doubt that the  defendant committed the extraneous offense or bad act.  We will affirm the conviction.

---

[1]  *Huizar v. State*, 12 S.W.3d 479, 483-85 (Tex. Crim. App. 2000), held that at the penalty stage of a bifurcated trial before a jury in a non-capital case, the statute (Tex. Code Crim. Proc. Ann. article 37.07, section 3(a), required the trial court to *sua sponte* instruct the jury, despite the absence of a request or objection, that it may not consider extraneous offense and bad act evidence offered at the penalty stage in determining punishment unless it finds the extraneous offenses and bad acts have been proven by the State beyond a reasonable doubt.

[2]  Two prior felony convictions for possession of cocaine were alleged in the indictment for the enhancement of punishment.  These allegations were abandoned by the State because of procedural problems.  The final felony convictions and four final misdemeanor convictions were introduced without objection at the penalty stage of the trial as a part of appellant's prior criminal record.  These extraneous matters are not involved in appellant's jury charge issues concerning unadjudicated extraneous matters.  *See Bluitt v. State*, 137 S.W.3d 51 (Tex. Crim. App. 2004).  *Bluitt* held that the trial court need not give a beyond a reasonable doubt burden of proof punishment instruction to the jury concerning extraneous offenses where those particular offenses resulted in a final conviction, probation, or deferred adjudication.  *Id*. at 54; s*ee also Moore v. State*, 165 S.W.3d 118, 121 (Tex. App.—Fort Worth 2000, no pet.).  *Bluitt* held that the only types of evidence for which a burden of proof is expressly articulated in article 37.07, section 3(a) are unadjudicated extraneous offenses and bad acts.  *Id*. at 54.  While the prior convictions must be properly proven, to require that prior convictions be re-proven beyond a reasonable doubt would be an absurd result.  The very fact of conviction is evidence that the burden of proving guilt beyond a reasonable doubt has already been met in a prior proceeding.  *Id*.  Of course, when the State alleges in the charging instrument a prior conviction for enhancement or punishment, it must prove certain elements beyond a reasonable doubt.  *See Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991).

2

## BACKGROUND

Appellant does not challenge the legal or factual sufficiency of the evidence. A brief summary of the facts will place the points of error in proper perspective.

Q. K., the 13-year-old complainant who was 11 years old at the time of the offense, testified that on March 25, 2004, she lived with her mother and stepfather, Edward Earl Johnson, in Temple. Q. K. had been diagnosed by her doctors as having an attention deficit disorder. She had been prescribed Concerta and a sleeping medicine to be taken at night.

Q. K. testified that appellant, her mother's cousin, came to the house where she lived on the night of March 24, 2004. Q. K. related that she slept that night on a couch or love seat in the living room. Appellant was also to sleep in that room. Q. K. took her sleeping medication before going to bed, but she woke up during the night to find appellant on top of her. Her nightgown had been pulled up and her panties pulled down. She stated that appellant had inserted his penis in her anus. She told appellant to get off of her and dozed off again as a result of the medication. Sometime later in the night, she awakened and found appellant on top of her again, doing the same thing. She insisted that he get off of her. At this point, appellant offered Q. K. $20 if she would let him touch her chest. She refused but succumbed again to the medication and fell asleep. When she woke up the next morning, she ran to tell her mother and stepfather what had happened and heard appellant leaving the house.

Q. K. was allowed to go to school that morning, but the assistant principal, Donna Lammert, noticed a change in Q. K.'s normal demeanor. Subsequently, it became clear there was a problem requiring intervention. Q. K.'s mother and stepfather came to the school and met with

3

Lammert. Q. K. was angry and upset and told what had happened during the night. The Temple Police Department was called. Q. K.'s mother left the school because she had outstanding felony arrest warrants for cocaine possession.

After talking to police officers, Q. K. was taken to the Scott and White Hospital for an examination by Alice Linder, a sexual assault nurse examiner. Q. K. repeated the events to Linder. Linder found some brown fecal-like material on Q. K.'s genitals that was consistent with the transfer of fecal matter from the anus to the vaginal area. An abrasion and a tear was discovered between Q. K.'s anus and vagina. According to Linder, nothing in the examination was inconsistent with Q. K.'s revelation of the previous night's events. Linder took swabs from the various areas in the genital and anal portions of Q. K.'s body which were submitted to the Department of Public Safety laboratory in Waco along with other items taken by the police from the Johnson home where Q. K. lived. Despite Q. K.'s statement that appellant placed his penis "in her butt," Nurse Linder expressed her opinion that Q. K.'s female sexual organ had also been penetrated. The DPS laboratory report reflected that no semen or sperm was found on the submitted items. DPS chemists did locate a mixture of Q. K.'s and appellant's DNA on the swab taken from the perianal area between Q. K.'s anus and vagina.

Appellant did not testify. He called a Temple police officer to point out an inconsistency between Q. K.'s trial testimony and her earlier statement to the officer about when appellant left the Johnson house in the morning after the commission of the offense. The other defense witness was Q. K.'s stepfather, Edward Earl Johnson, whom appellant attempted to use to establish the defensive issue of fabrication of the sexual assault charge.

4

**EXTRANEOUS MATERIAL INTRODUCED AT GUILT-INNOCENCE STAGE**

At this point, we will point out that the evidence which appellant claims entitled him to a *sua sponte* jury instruction on the burden of proof beyond a reasonable doubt at both stages of the trial under the authority of article 37.07, section 3(a) and *Huizar*.

During the guilt-innocence stage of the trial, appellant sought to establish a defensive issue of fabrication concerning the instant offense. He attempted to show a conspiracy between Q. K. and her stepfather. In doing so, appellant elicited evidence of his own conduct. On cross-examination, appellant elicited from Q. K. that her mother, Lisa Johnson, had problems in the past with the use of cocaine; that appellant and her mother had smoked crack cocaine together and that on the night in question, Q. K. did not see them smoking crack cocaine, but could smell it through the bathroom door. Appellant also elicited from Q. K. that she was disappointed in her mother's use of cocaine, that she had asked her mother to stop, but her mother did not. Q. K. said, "I'm just a child. I can't tell my mother what to do." When asked if she blamed appellant for her mother's use of cocaine, Q. K. responded, "My mother was smoking crack for a long, long time, and I believe he was too."

On further cross-examination, appellant's counsel asked Q. K. whether she and her stepfather had decided to make up this story about appellant because he was using crack cocaine and getting her mother "back to smoking." She responded, "My momma was smoking before he [appellant] came back to Temple. . ."

Later, appellant's counsel called Edward Earl Johnson as a defense witness. On direct examination, Johnson acknowledged that he had been to prison twice for possession of cocaine, but

5

in the last ten years he had been working and had not used cocaine for that period of time. Johnson stated that his wife, Lisa, had used cocaine for years despite her efforts to quit. When asked on direct examination if appellant used cocaine, Johnson stated, "I believe so." Johnson did not know if Lisa and appellant used cocaine together and had never observed them doing so. Johnson admitted that he was familiar with the smell of cocaine smoke but he never noticed that smell when Lisa and appellant were together on the night in question. He would not "really" be surprised, however, if they were smoking cocaine. Johnson did not consider appellant a bad influence on Lisa. The State did not seek to pursue the matter. In attempting to advance his defensive theory of fabrication, appellant himself elicited the extraneous offense of his possession and use of cocaine on the night in question, which he now claims entitled him to the *sua sponte* jury instructions.[3]

## "BAD ACT" EVIDENCE

We turn now to the "bad act" evidence elicited at the guilt-innocence stage which appellant urges entitled him to *sua sponte* jury instructions at both stages of the bifurcated trial on the non-capital offense involved.

On direct examination of Edward Earl Johnson, Q. K.'s stepfather, appellant established that Johnson got home from work on the night of March 24, 2004, around 11:30 p.m. and observed appellant standing outside the Johnson house. There was a conversation between Johnson

---

[3] Appellant, who pleaded "not guilty," did not at either stage of the trial attempt to utilize evidence of his smoking of crack cocaine as an excuse or reason for his alleged conduct. It was only in the jury argument at the penalty stage after the jury instructions were given that appellant's counsel briefly suggested that the use of cocaine may have influenced appellant's actions toward the complainant.

and appellant resulting in appellant asking to stay at the Johnson house, and Johnson agreeing. Johnson explained that appellant was his wife's cousin and that they were "close."

On the cross-examination of Johnson by the State, inquiry was made into the same subject matter and conversation. Johnson acknowledged that he had known appellant for some time and that it was his understanding that appellant was living with appellant's brother in Austin. The record then reflects:

Q.    What did he tell you?

A.    His brother had kicked him out.

Q.    Was he looking for a place to stay?

A.    Yes.

The State, on cross-examination, had the right to inquire into the same conversation first elicited by the defense. *See* Tex. R. Evid. 107 (Rule of Optional Completeness). The evidence reflected action by the appellant's brother, not by appellant. It would be pure speculation to guess what caused the brother's action. The matter was not further developed or pursued by the prosecution. Nevertheless, appellant claims this was "bad act" evidence in light of the term used in article 37.07, section 3(a).

**POINTS EXPLAINED**

We turn now to appellant's contentions that the trial court egregiously erred in failing *sua sponte* to instruct the jury on the State's burden of proof (beyond a reasonable doubt) as to "extraneous offenses" at both stages of the bifurcated non-capital trial, relying upon *Huizar*. We

7

must determine whether extraneous matters introduced only at the guilt stage of the trial are before the jury at the penalty stage so as to invoke the *sua sponte* requirement of a "reasonable doubt instruction." Further, we must determine whether article 37.07, section 3(a) has any application to the guilt-innocence stage so as to require a "reasonable doubt instruction" at the first stage of a bifurcated trial in a non-capital case. Article 37.07, section 3(a) provides in pertinent part:

> Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.
>
> (a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. A court may consider as a factor in mitigating punishment, the conduct of a defendant while participating in a program under chapter 17 as a condition of bail. Additionally, not withstanding Rule 609(d), Texas Rules of Evidence, and subject to Subsection (h), evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant or a penal law of the grade of:
> (A) a felony; or
> (B) a misdemeanor punishable by confinement in jail.
>
> (2) Notwithstanding Subdivision (1), evidence may not be offered by the state to establish that the race or ethnicity of the defendant makes it likely that the defendant will engage in future criminal conduct.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (1) (West Supp. 2006). *See* Act of May 17, 2001, 77th Leg., R.S., ch. 585, 2001 Tex. Gen. Laws 1118.

8

The statute is one of the guiding principles for the admissibility of evidence at the penalty stage of trial. *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002). It is a legislatively mandated procedural statute that expressly disavows Rules 404, 405, and 609 of the Texas Rules of Evidence. Even Rule 401 is not a "perfect fit" in the punishment context. *Id*. at 234. The legislature, of course, has the power to mandate the rules of evidence. *Williams v. State*, 707 S.W.2d 40, 45 (Tex. Crim. App. 1986); *Jackson v. State*, 861 S.W.2d 259, 261 (Tex. App.—Dallas 1993, no pet.). Pursuant to article V, section 31 (c) of the Texas Constitution, the legislature has partially delegated its evidentiary rule making authority to the judiciary. *See* Tex. Gov't Code Ann. § 22.109 (West 2004). Article V, section 31 of the Constitution and section 22.109 expressly reserve the legislature's right to disapprove of rules promulgated by the judiciary. *Jackson*, 861 S.W.2d at 261. The action of the legislature in enacting article 37.07, section 3(a) is consistent with the concept of limited delegation articulated in the state constitution, the government code, and Rule 101 (c) of the Texas Rules of Evidence. *Id*. at 261. Thus, article 37.07, section 3(a) trumps any rule of evidence adopted by the Texas Court of Criminal Appeals.

Article 37.07 has long been an integral part of our bifurcated trial system in non-capital cases. It properly applies only where a plea of not guilty is before a jury, which assesses punishment. *See Barfield v. State*, 63 S.W.3d 446, 449-51 (Tex. Crim. App. 2001).[4] It is important to consider the development of the law surrounding article 37.07.

---

[4] There are many unauthorized bifurcation of criminal cases despite the wording of the statute. *See Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001).

In considering the *Huizar* case's interpretation of article 37.07, we will keep in mind the advent of the bifurcated trial system in the 1965 Code of Criminal Procedure, the history of the statute, including the first statutory definition of "prior criminal record," the 1989 amendment, *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim. App. 1992) (holding inadmissible unadjudicated extraneous offenses at penalty stage of trial), the 1993 amendment following the *Grunsfeld* decision and all later amendments to section 3(a) of article 37.07.[5]

---

[5] Article 37.07 was enacted as part of the 1965 Code of Criminal Procedure. Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 91, 1965 Tex. Gen. Laws 317, 462-63. It established an "alternative procedure" in section 2, a bifurcated trial system in certain criminal cases where the plea of not guilty was before a jury who would assess punishment, if necessary. The 1965 version also provided that, at the penalty stage of the trial, either party could offer evidence "as to the prior criminal record of the defendant, his general reputation and his character." *Id.* at 462. "The term 'prior criminal record' was not defined, and this generated much confusion as to what evidence was properly admissible. Questions arose as to whether arrests, rap sheets, unadjudicated offenses and remote cases fell within the meaning of the term, or whether only final convictions could be used." *Grunsfeld v. State*, 813 S.W.2d 158, 165 (Tex. App.—Dallas 1991), *aff'd* 843 S.W.2d 521 (Tex. Crim. App. 1992).

At the next session of the legislature, article 37.07 was amended to define "prior criminal record" as meaning "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." *See* Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 22, 1967 Tex. Gen. Laws 1732, 1740. Section 3 of article 37.07 made its first appearance in this 1967 amendment. The definition of "prior criminal record" remained the same for a number of years. There were subsequent amendments to section 3 which are not pertinent to our discussion. *See, e.g.*, Act of May 24, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 965, 971; Act of May 27, 1987, 70th Leg., R.S., ch. 385, § 19, 1987 Tex. Gen. Laws 1891, 1898.

In *Murphy v. State*, 777 S.W.2d 44, 61 (Tex. Crim. App. 1988) (op. on reh'g), it was held that in the penalty stage of a non-capital case' evidence of unadjudicated offenses was not admissible in light of the existing language of article 37.07. S*ee also* 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 38.61 (2d ed. 2002) (hereinafter Dix).

In 1989, the legislature amended the language in article 37.07, section 3(a) by allowing evidence permitted by the rules of evidence to "be offered by the state and the defendant as to *any matter the court deems relevant to sentencing* including the prior criminal record of the defendant,

his general reputation and his character." The definition of "prior criminal record" was retained. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 404, 989 Tex. Gen. Laws 3471, 3492 (emphasis added as to new language); *see also* 43 Dix § 38.62.

The Texas Court of Criminal Appeals in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim. App. 1992) (affirming *Grunsfeld v. State*, 813 S.W.2d 158), held that the 1989 amendment to article 37.07 did not authorize the State to introduce evidence of unadjudicated offenses at the penalty stage of the non-capital case for aggravated sexual assault in which the defendant had been assessed a life sentence. At the penalty stage, the State had introduced three additional complaining witnesses who testified in great detail about their rapes by the defendant in those unadjudicated cases in which the defendant was still presumed innocent. The Court of Criminal Appeals arrived at its conclusion based on the retention of the definition of "prior criminal record" in the 1989 amendment. *Id*. at 524-25. The *Grunsfeld* court noted that the prior convictions must be final before being admitted at the penalty stage and even then the details of the final conviction are not admissible. *Id*. at 525. The Court found that the trial court abused its discretion in admitting the unadjudicated offenses into evidence and that harm resulted. *Id*.; *see also* 43 Dix § 38.63.

In an obvious effort to overturn the *Grunsfeld* opinion, the legislature amended article 37.07, section 3 again in 1993. *See* 43 Dix § 38.64. The 1993 amendment provided in pertinent part:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including, but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.*

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759 (emphasis added). The definition of "prior criminal record" and the "Rules of Evidence" language was deleted and the emphasized portion was added to the statute. For the first time, the undefined term "bad act" appeared in the statute. Article 37.07, section 3(a) has since been amended without substantial change with regard to our discussion. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262 § 82, 1995 Tex. Gen. Laws 2517, 2583. Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 31, 1997 Tex. Gen. Laws 4179, 4191; Act of May 17, 2001, 77th Leg., R.S., ch. 585 § 1, 2001 Tex. Gen. Laws 1118, 1119. The 2001 Amendment was in effect at the time of the instant trial.

11

**THE *HUIZAR* CASE**

The *Huizar* decision involved a bifurcated non-capital prosecution of an aggravated sexual assault where the defendant entered a plea of not guilty before a jury. At the penalty stage of the trial, the State introduced evidence of unadjudicated extraneous offenses and bad acts. *Huizar*, 12 S.W.3d at 481. The trial court did not instruct the jury on the beyond a reasonable doubt burden of proof applicable to such evidence. Appellant did not request such an instruction nor object to its omission. *Id*. The *Huizar* court held that the trial court was not constitutionally required, but was statutorily required by article 37.07, section 3(a) to instruct the jury *sua sponte* on the burden of proof for unadjudicated extraneous offense evidence admitted at the penalty stage of the trial and the error in failing to so instruct was subject to a harm analysis. *Huizar*, 12 S.W.3d at 484.

*Huizar* made clear that the plain language of section 3(a) requires that such evidence may not be considered in *passing on punishment* until the jury is satisfied beyond a reasonable doubt that the extraneous offenses and bad acts were committed by the defendant or attributable to him. *Id*. at 481 (citing *Fields v. State*, 1 S.W.3d 687 (Tex. Crim. App. 1999)). The *Huizar* opinion observed that "[w]hile section 3(a) says nothing about the submission of a jury instruction to this effect, such instruction is logically required if the jury is to consider the extraneous offense and bad act evidence under the statutorily prescribed reasonable-doubt standard." *Id.* at 484. The *Huizar* court made plain that section 3(a) of article 37.07 "Evidence of Prior Criminal Record After a Finding of Guilty" governs the admissibility of evidence at the penalty stage of all non-capital cases. *Id.* at 483-84.

The *Huizar* court concluded that the failure to *sua sponte* submit the jury charge in question as "law applicable to the case" under article 36.14 of the Code of Criminal Procedure [6] was "charge error" under article 36.19 of the Code of Criminal Procedure [7] and subject to an egregious harm analysis under *Almanza*, 686 S.W.2d at 171. *Huizar*, 12 S.W.3d at 484-85. *Huizar* has been consistently followed. *See*, e.g., *Ellison v. State*, 86 S.W.3d 226, 227-28 (Tex. Crim. App. 2002); *Bolden v. State,* 73 S.W.3d 428, 431 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Allen v. State*, 47 S.W.3d 49, 50 (Tex. App.—Fort Worth 2001, pet. ref'd).

We know from *Huizar* that section 3(a) of article 37.07 applies directly to the penalty stage of a bifurcated trial. *Id*. at 483-84.[8] Both the State and the defense may offer evidence at the penalty stage of the trial, but it is the State who is the usual proponent of unadjudicated extraneous offense and bad act evidence, hence the burden of proof beyond a reasonable doubt is on the State pursuant to the statute.

In *Allen*, 47 S.W.3d at 50, the court approved as proper the penalty stage reasonable doubt jury instruction concerning extraneous offense evidence set out in *Taylor v. State*, 970 S.W.2d 98, 101 (Tex. App.—Fort Worth 1998, pet ref'd).[9] In *Graves v. State*, 176 S.W.3d 422, 433 n.6

---

[6] Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2006).

[7] Tex Code Crim. Proc. Ann. art. 36.19 (West 1987).

[8] We observe that *Huizar* has been applied in pleas of guilty before a jury which is actually a unitary trial. *See Sunbury v. State*, 88 S.W.3d 229, 230 (Tex. Crim. App. 2002); *Baptiste v. State*, 73 S.W.3d 402, 404, 408 (Tex. App.—Dallas 2002, no pet.).

[9] The jury instructions in *Taylor v. State*, 970 S.W.2d 98, 101 (Tex. App.—Fort Worth 1998, pet. ref'd), provided:

13

(Tex. App.—Houston [1st Dist.] 2004, pet. ref'd, untimely filed), the court set out an example of an article 37.07, section 3(a) jury instruction from *Green v. State*, 72 S.W.3d 420 (Tex. App.—Texarkana 2002, pet. ref'd):

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if an [sic] were committed.

*Id*. at 425-26.

## EVIDENCE FROM THE GUILT STAGE OF TRIAL

*Huizar* and *Grunsfeld*, ( which triggered the 1993 amendment to section 3(a) of article 37.07) only involved the introduction of extraneous offense matters at the penalty stage of the trial. The required *Huizar* jury instruction is better understood and easier to apply in such situations. What occurs when the only extraneous offense evidence is introduced at the guilt stage? Does *Huizar* apply to this evidence at the penalty stage which follows?

---

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. Said evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider said testimony for any purpose *unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed.*

(Emphasis added).

14

The evidence from the guilt stage of the trial is "automatically" before the jury at the penalty stage by operation of law. *See Green v. State*, 839 S.W.2d 935, 945 (Tex. App.—Waco 1992, pet. ref'd). At the penalty stage, a jury may consider all the evidence adduced at the guilt stage. *Yohey v. State*, 801 S.W.2d 232, 242 (Tex. App.—San Antonio 1990, pet. ref'd). There is no requirement that the evidence from the guilt stage be re-offered in order to be considered by the jury on the issue of punishment. *See Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003); *Buchanan v. State*, 911 S.W.2d 11, 13 (Tex. Crim. App. 1995); *Ex parte Girmus*, 64 S.W.2d 619, 620-21 (Tex. Crim. App. 1983); *Wright v. State*, 468 S.W.2d 422, 425 (Tex. Crim. App. 1971); *Yohey*, 801 S.W.2d at 242.

It is customary for the prosecution in the jury's presence at the penalty stage to re-offer the evidence from the first stage of the bifurcated trial. Such re-offer by the prosecution is unnecessary and has no legal effect. *Green*, 839 S.W.2d at 745-46. A re-offer is a "cursory request" and is not considered an "offering" of evidence by which the State is bound. *See Martin v. State*, 42 S.W.3d 196, 199 (Tex. App.—Fort Worth 2001, pet. ref'd). The State's re-offer has no effect on the use of that evidence at the penalty phase. *Rayme v. State*, 178 S.W.3d 21, 27 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "We see no distinction in our evaluation of the evidence merely because the State moved to re-admit it in the punishment phase of the trial." *Id*. The prosecutor in the instant case made no effort to re-offer the guilt stage evidence.

Trial courts routinely instruct the jurors at the penalty stage to consider all of the evidence admitted before them at the guilt stage when determining the punishment to be assessed. *See Murphy*, 777 S.W.2d at 63. The trial court in the instant case so instructed the jury.

15

The foregoing makes clear that if the State re-offers at the penalty stage all the evidence from the guilt stage, it is not bound by such evidence, particularly evidence it did not introduce. The same is true where it is only the trial court that instructs the jury that all the evidence from the guilt stage is before the jury. Moreover, at the penalty stage, the State does not have the burden of proof beyond a reasonable doubt to prove extraneous offense evidence offered by the defense, as in the instant case.

The Fort Worth Court of Appeals, in *Allen*, held that if extraneous offense and bad act evidence is before the jury regardless of whether such evidence was introduced at the guilt-innocence stage or the penalty stage, article 37.07, section 3(a) requires the statutorily-prescribed reasonable doubt instruction be given *sua sponte* to the jury at the penalty stage of the trial. *Allen*, 47 S.W.2d at 50, citing *Huizar* and *Fields*.[10] In *Graves*, the court held that the jury instruction required by *Huizar* was limited to extraneous offense or bad act evidence actually admitted at the penalty stage of the trial, but then extended *Huizar* to hold that the required jury instruction was necessary for extraneous offense evidence from the guilt stage only if that evidence was in turn *used* at the penalty stage. *Graves*, 176 S.W.3d at 432.

In *Rayme v. State*, 178 S.W.3d 21, 26 (Tex. App.—Houston [1st Dist.] 2005, pet ref'd), the Houston court reaffirmed the position it took in *Graves,* and expressly declined to follow the earlier *Allen* decision by the Fort Worth court.

---

[10] The *Allen* court recognized that most extraneous offense and bad act evidence is introduced at the penalty stage of the trial. *Allen v. State*, 47 S.W.3d 47, 50 (Tex. App.—Fort Worth 2001, pet. ref'd).

**THE INSTANT CASE**

In light of the foregoing, we return to the two extraneous matters appellant claims entitled him to a required *sua sponte Huizar* charge at the penalty stage. Both the extraneous offense and the so-called "bad act" were admitted at the guilt stage and was thus before the jury at the penalty stage. What appellant overlooks is that he, not the State, was the proponent of the extraneous offense of possessing and using crack cocaine. He elicited this evidence from the complainant on cross-examination and on direct examination of his own witness, her stepfather. Appellant did not offer the extraneous evidence as an excuse or reason for the alleged conduct, but to support his defensive theory of fabrication, an unsuccessful attempt to show a conspiracy between the complainant and her stepfather to frame him on the sexual assault charge because they thought that he had encouraged the wife and mother to "fall off the wagon" and use crack cocaine.

The State did not pursue the extraneous offense evidence at the guilt stage nor did it use the evidence at the penalty stage of the trial. Because the evidence was elicited by appellant for his own purposes, we conclude that the trial court did not err in failing *sua sponte* to give at the penalty stage, a reasonable doubt instruction concerning this evidence and placing the burden of proof on the State. *See Martin*, 42 S.W.3d at 200; *cf. Elder v. State*, 100 S.W.3d 32 (Tex. App.—Eastland 2002, pet. ref'd).

**"BAD ACT" EVIDENCE**

Article 37.07, section 3(a) has never defined the term "bad act" since its advent in the 1993 amendment, and the term is not defined elsewhere in the code of criminal procedure. When words are not defined, they are ordinarily given their plain meaning unless the statute clearly shows

17

that they were used in some other sense. *Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim. App. 1998). *Ex parte Anderson*, 902 S.W.2d 695, 699 (Tex. App.—Austin 1995, pet. ref'd). "In its most general sense this noun [act] signifies something done voluntarily by a person; the exercise of an individual's power; an effect produced in the external world by an exercise of the power of a person objectively, prompted by intention, and proximately caused by a motion of will." Black's Law Dictionary 25 (7th ed. 1999). "Bad" means "(1) inferior; poor; (2) Evil; wicked; sinful; (3) Misbehaving; disobedient; naughty." The American Heritage Dictionary of the English Language 98 (1973). In *Cox*, 931 S.W.2d at 340 (Tex. App.—Fort Worth 1996, pet. ref'd); the court of appeals stated that "the statute's unambiguous wording makes evidence about them [bad acts] admissible in two situations:

(1)     Where the "bad act" was an offense for which the defendant could be held criminally responsible; and

(2)     Where the act was "bad" but not an offense for which he could be held criminally responsible."

*Cox*, 931 S.W.2d at 357; *cf. Haley v. State*, 173 S.W.3d 510, 514-15 (Tex. Crim. App. 2005). In *Cox*, evidence that the defendant followed a woman that he did not know through traffic to her apartment complex, then jiggled the knob on her locked apartment door after one o'clock in the morning, was held to be an admissible "bad act" evidence. 931 S.W.2d at 357. In the instant case, the "bad act" was the statement of Edward Earl Johnson that appellant told Johnson that "[h]is brother had kicked him out," apparently meaning from the house of appellant's brother in Austin.

18

This statement referred to action on the part of appellant's brother, not appellant. No reason or cause for such action was ever developed. The matter was not pursued by the State.

Because no extraneous offense or bad act evidence was introduced at the penalty stage of the trial, and because the only such evidence introduced at the guilt stage was either by appellant himself for defensive reasons or was not a "bad act," we conclude that the trial court did not err in failing to *sua sponte* give a reasonable doubt instruction at the penalty stage placing the burden of proof on the State. The first point of error is overruled.

## POINT OF ERROR TWO

In point of error two, appellant urges that the trial court committed egregious error by failing to *sua sponte* give a *Huizar*-type reasonable doubt jury instruction as to any extraneous offense evidence at the guilt-innocence stage of the trial. Appellant seeks to import *Huizar* and its interpretation of article 37.07, section 3(a) from the penalty stage into the guilt stage, even where no request or objection was made. *Huizar* held that article 37.07, section 3(a) is statutorily prescribed law applicable to the case at the penalty stage of the trial. 12 S.W.3d at 483. The express language is specifically restricted to the penalty stage of the trial. It does not come into play until after a finding of guilt. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). The *sua sponte* jury charge required under the *Huizar* decision must instruct the jury that it may not consider extraneous offense and bad act evidence *in determining punishment* unless the jurors have found that the State has proven beyond a reasonable doubt that the defendant committed said extraneous offenses or bad acts. Punishment is not an issue at the guilt-innocence stage of a bifurcated jury trial. Article 37.07, section 3(a) has been held not applicable to the case at the guilt-innocence stage. *See Allen v. State*,

19

180 S.W.3d 260, 266 (Tex. App.—Fort Worth 2005, no pet.); *Graves*, 176 S.W.3d at 433; *Rodriguez v. State*, 137 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2004, no pet.). It would be absurd to instruct the jury at the guilt-innocence stage on how to consider extraneous offense evidence on the issue of punishment, when the defendant is presumed to be innocent and the issue of punishment is not before the jury and may never be.[11]

The Texas Court of Criminal Appeals has never extended *Huizar* to the guilt stage. Some cases have done so. *See, e.g.*, *Rodgers v. State*, 180 S.W.2d 716, 723-24 (Tex. App.—Waco 2005, no pet.); *Arnold v. State*, No. 05-01-01733-CR, 2002 Tex. App. LEXIS 8186 (Tex. App.—Dallas Nov. 20, 2002, no pet.) (not designated for publication) (finding error harmless, assuming *Huizar* applied to guilt stage).

Upon timely request or objection, a defendant may be entitled to certain jury instructions on reasonable doubt as to extraneous offense evidence at the guilt stage of the trial, but not because of article 37.07, section 3(a) and the *Huizar* decision. Point of error two is overruled.

The judgment is affirmed.

---

[11] If the trial court is to assess punishment at the penalty stage, there is no jury charge and *Huizar* is not applicable.

_____ John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion*

Affirmed

Filed:   October 25, 2006

Publish

*  Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).