# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00532-CR

**Derrick Wayne McDonald, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 63163, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Derrick Wayne McDonald guilty of aggravated robbery and assessed sentence at 25 years in prison and a $10,000 fine. He contends that the trial court erred (1) by proceeding with voir dire of the jury panel after the panelists heard that a defendant was going to plead guilty, and (2) by failing to sua sponte make a written instruction as to the burden of proof necessary for the jury to consider an extraneous offense in the punishment phase of trial.

Although appellant does not challenge the sufficiency of the evidence, a summary of the evidence will provide context for the issues on appeal. At the guilt-innocence phase of trial, employees of a Sonic Drive-in testified that a man wearing a black mask, a black jacket or sweater-type hoodie, gloves, and dark shoes robbed them at their store. The man approached them with a gun, removed their cell phones, and instructed an employee to empty the cash register. The employee put the money into a bag and gave it to the man. The robber ordered the employees into

a bathroom and told them to stay there for twenty minutes. They did so, then called the police. Other witnesses testified about the robbery of a nearby Dollar General Store shortly after the Sonic robbery. The robber there was described as wearing a black jacket with a hood and a mask. Witnesses of both robberies later identified a dark jacket with a hood, a mask, and gloves that were consistent with what they recalled their respective robbers wearing.

Peace officers responding to the robbery calls also testified. An officer who heard the police radio report of the Dollar General Store robbery went to the residential neighborhood behind the store and observed a black male dressed in black entering a Suburban. Despite the officer's attempt to stop the vehicle, a chase ensued. An officer interviewing witnesses at Sonic joined the chase after hearing about it on the police radio. During the chase, the driver of the Suburban discarded a black object. The Suburban crashed, and the chase continued on foot. Appellant was arrested at the end of the chase. An officer who retraced the path of the chase found a black jacket, gloves, and a black mask. A handgun and a money bag were found in the Suburban. The amount of money in the bag was consistent with the amount of money missing from the Sonic.

Appellant testified and admitted committing the robberies. He testified that he was not in his right mind when committing the robberies due to the Post-Traumatic Stress Disorder that had gotten him discharged from the army, and his failure to take medications to control the effect of PTSD and his manic/depressive disorder.

Appellant contends that the jury panel was irrevocably tainted during voir dire by information indicating that appellant was considering pleading guilty. The prosecutor asked if the panelists had any questions for him or wanted to bring anything to his attention. Two panelists

2

stated that they had heard court personnel mention during the general jury pool meeting that one of the two cases set for that day was not going to trial because the defendant was going to plead guilty. One of the panelists stated that he had heard several panelists speculate that they might be in the jury pool for the case in which the defendant was going to plead guilty. He reported that one of the panelists said, "Well, if he was considering pleading guilty, what does that tell you." The prosecutor stated, "I appreciate you bringing that to our attention. What I can tell you was, this is the case where the guy never intended on pleading guilty." The prosecutor went on to describe that, in the other case set for trial that day, the defendant did plead guilty. The prosecutor added, "So that is the case that this gentleman Juror Number 19 is referring to. Not this case. Okay. Anyone have any questions about that?" The only response was a comment from another panelist who asserted that the judge, not the clerk, had mentioned the possibility of a plea bargain. The court then summed up the discussion as follows:

> There were two cases I had in my court this week. And one of the other judges was going to try my case and that defendant pled guilty this morning pursuant to a plea bargain. And the jury was dismissed by another court while we were getting ready to have you come in. So I will make sure that we clear that up with the other judges as well as with the clerk's office. I appreciate your letting me know that because we certainly don't need to waste juror's time and having somebody be tainted. But that, certainly whatever you overheard, or you heard in the courtroom does not apply to this defendant. That has not been the case here.

Appellant nonetheless contends that his jury panel was irrevocably tainted by this discussion, thereby depriving him of his constitutional right to due process and a fair trial.

Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Generally, a party must object to errors during trial

in order to preserve error. Tex. R. App. P. 33.1; *see Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983). However, we can consider fundamental errors affecting substantial rights although they were not brought to the attention of the court. *See Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.); *see also* Tex. R. Evid. 103(d). We must reverse for constitutional error unless we find beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a). We must disregard any other error, defect, irregularity, or variance that does not affect substantial rights. *See* Tex. R. App. P. 44.2(b).

Appellant has not shown that the court deprived him of due process by proceeding with voir dire and trial after the panelists made statements in front of the entire panel regarding a possible guilty plea. Appellant did not object to the continuation of voir dire, nor did he request that the trial court inquire of the entire panel whether they understood that appellant did not attempt to plead guilty. Further, appellant failed to ask this allegedly necessary question during his portion of voir dire. Appellant did not seek to have the entire panel, or just the two venire members who raised the issue, struck for cause. Appellant did not preserve this issue for review. More important, we find no error in the continuation of voir dire. Two jury panelists raised a concern that the panel might be tainted by the belief that appellant was seriously considering pleading guilty. Both the prosecutor and the court plainly stated that, of the two cases set for trial that day, one of the defendants considered pleading and actually did plead guilty, and that appellant did not intend to plead guilty. When the prosecutor asked the panel if anyone had questions, no panelist spoke up. There is no evidence in the record that, after the prosecutor's and the court's statements, any panelist had any lingering doubt regarding whether this appellant considered pleading guilty. On this record,

we conclude beyond a reasonable doubt that the court did not deprive appellant of any due process by proceeding with voir dire without further inquiry into the issue.

Appellant also has not shown that the court erred by failing to sua sponte instruct the jury at the punishment phase that the State must show beyond a reasonable doubt that appellant committed an extraneous offense before the jury could consider the offense. The code of criminal procedure provides that evidence of an extraneous offense can be considered at punishment only if the factfinder finds beyond a reasonable doubt that the defendant committed the offense. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2009). The trial court is required to instruct the jury accordingly even if no instruction is requested. *See Huizar v. State*, 12 S.W.3d 479, 483 (Tex. Crim. App. 2000). The failure to provide the instruction is not constitutional error. *Id*. at 484. Because appellant did not timely object to the absence of the instruction, we cannot reverse unless the error is so egregious that the defendant was not given a fair and impartial trial. *Id*. at 484-85 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). The degree of harm must be evaluated "in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanaza*, 686 S.W.2d at 171 (quoted in *Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2000, pet. ref'd) (on remand from Tex. Crim. App.)). Any harm suffered must be actual and not merely theoretical. *See Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999). The State argues that, because the Sonic robbery was followed almost immediately by the Dollar General robbery—so much so that items linking appellant to the Sonic robbery were found when appellant was captured when being

pursued from the scene of the Dollar General robbery—the two robberies are essentially the same occurrence and the Dollar General robbery is therefore not an extraneous offense. We need not consider that theory because the record does not show that the error deprived appellant of a fair and impartial trial.

Although our analysis is limited to whether the lack of the instruction at the punishment phase affected the punishment, we can consider evidence from the guilt-innocence phase. *See Wright v. State*, 212 S.W.3d 768, 776 (Tex. App.—Austin 2006, pet. ref'd). In this case, the jury's assessment of the evidence regarding appellant's affirmative defense at the guilt-innocence phase informs our consideration of whether the court's error in omitting the extraneous offense instruction at the punishment phase warrants reversal. Appellant admitted on the stand at the guilt-innocence phase that he committed the actions underlying the charges. The only contested issue regarding either the offense charged or the extraneous offense was whether appellant was able to form the intent required to commit the offenses. Appellant's request for community supervision was based on his assertion that he would comply with all rules and stay on his medications because he was now aware of the consequences of going off of his medications.

Appellant testified that he was not in his right mind when he committed the robberies. At the guilt-innocence phase, he testified repeatedly that he did not remember many aspects of the robberies because he had stopped taking medications meant to combat PTSD and manic/depressive disorder. He testified that a friend of his picked the robbery targets and provided him with the clothing he wore during the robberies, including gloves, rubber-soled shoes, a black jacket with a hood, and black fabric fashioned into a mask that could be secured over his face. He conceded that

6

rubber-soled shoes would probably be a good choice of footwear for a person in his right mind who was planning a robbery. He said that his friend put the mask on him, provided him with the .45 caliber handgun, and loaded it. He also testified that she must have told him where to park and what approach to take to commit the robberies. He testified that, while in his right mind, he did not have the mentality to plan a robbery, even though he was trained in special forces in the army and had recently obtained an associate's degree in criminal justice. He remembered waiting outside the Sonic for thirty minutes for someone to come out the back door, but testified that he did not recall why he did not simply walk into the Sonic and commit the robbery. He testified that he did not recall telling a Sonic employee to be quiet or removing the employees' cell phones. He testified that he did not recognize at the time that his conduct was wrong because of the absence of his medications.

There was other testimony at the guilt-innocence phase regarding the experience of the robbery victims, the police pursuit and evidence gathering, and a forensic psychiatrist who interviewed and evaluated appellant's sanity. The jury also heard testimony about the Dollar General robbery which happened nearby and shortly after the Sonic robbery. The forensic psychiatrist testified that "there was an overwhelming amount of evidence showing that [appellant] knew what he was doing was wrong"—primarily the steps he took to conceal his illegal behavior. He wore a mask and gloves to conceal his identity, and he put the victims in a locked room to prevent them from notifying the police. The psychiatrist concluded that, at the time of the offense, appellant was not suffering from a serious mental disease or defect. She opined that, although he might have PTSD, his planning and conduct of the robberies was not caused by the disorder. She asserted that someone with PTSD caused by combat would avoid being around guns, prisoners, and police. She

7

also testified that appellant told her his use of illegal drugs (marijuana and ecstasy) and alcohol affected his memory of the robberies, but she concluded that he was lying to her about the memory loss.

The jury was instructed at the guilt-innocence phase that it must find beyond a reasonable doubt that he acted intentionally or knowingly when committing the Sonic robbery, whether when threatening the Sonic employee or when using or exhibiting the deadly weapon. The jury was also instructed at the guilt-innocence phase that "[i]t is an affirmative defense to the conduct charged that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." The jury was also instructed at the guilt-innocence phase that it could not consider testimony regarding offenses other than the Sonic robbery unless it believed beyond a reasonable doubt that appellant committed the offenses. The jury was not asked to and did not make a finding regarding the extraneous offense, but did convict appellant of aggravated robbery. The jury, therefore, must have found beyond a reasonable doubt that he acted knowingly or intentionally when threatening the employee or using or exhibiting the firearm. The jury, therefore, must have rejected appellant's affirmative defense that his lack of medication made him incapable of forming a culpable intent. Appellant admitted robbing both the Sonic and Dollar General stores, but contended that the absence of medication altered his state of mind on the day of both robberies. The evidence is such that a rational jury would have concluded that appellant's ability to form a culpable intent was the same for the robberies of both stores. Because the Sonic and Dollar General robberies were undisputedly close in time, and because there is no evidence indicating that his state of mind or unmedicated state was different between the two robberies,

8

the jury must have also rejected appellant's excuse for the Dollar General robbery at the guilt-innocence phase.

The record does not provide any support for a conclusion that the absence of an extraneous offense instruction at the punishment phase nevertheless deprived appellant of a fair and impartial trial. The testimony at the punishment phase regarding the Dollar General robbery was consistent with that at guilt-innocence, adding mostly the impact of the robberies on the victims and appellant's expression of disagreement with, but acceptance of, his conviction for the Sonic robbery. Because the jury was persuaded beyond a reasonable doubt at the guilt-innocence phase that appellant had the requisite intent to commit the Sonic robbery, we find no reason to believe that the jury would have ignored the testimony regarding the contemporaneous Dollar General robbery at the punishment phase if it had been given the extraneous offense instruction. Instead, the evidence supports finding that appellant's ability to form a culpable state of mind was the same regarding both robberies. The absence of the extraneous offense instruction at the punishment phase did not deprive appellant of a fair and impartial trial.

We affirm the judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear, and Henson

Affirmed

Filed: October 28, 2010

Do Not Publish

9