Carnice Edward BROWN, Appellant,

v.

The STATE of Texas, State.

No. 2-98-248-CR.

Court of Appeals of Texas, Fort Worth.

March 8, 2001.

---

David Chapman, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles Mallin, Chief, Appellate Div., Danielle A. LeGault, Asst. Dist. Atty. of Tarrant County, Matthew W. Paul, State Prosecuting Atty., for Appellee.

Panel LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON REMAND AND ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

HOLMAN, Justice.

### Introduction

We withdraw our opinion and judgment of November 2, 2000 and substitute the following in their place.

Appellant Carnice Edward Brown appeals from his conviction for aggravated assault with a deadly weapon (1) by causing bodily injury to Cherril Blount, his estranged wife, by ramming his car into hers, and (2) by threatening imminent bodily injury to Blount, again with his car. The record from guilt-innocence shows appellant rammed his car into Blount's truck while she was parked in an apartment parking lot. He then chased her when she attempted to escape and again rammed her vehicle. Blount testified she was forced to career up an embankment and injured both her hip and thumb, probably from the impact of the final hit and being forced up the embankment. She told Officer P.C. Ray about her injuries at the scene, and he testified that he saw a bruise on her thumb. Ray also took photographs of Blount's damaged truck. After finding appellant guilty, the jury assessed his punishment at three years' confinement for the aggravated assault resulting in bodily injury and six years' probation for the aggravated assault by threats.

### Procedural History

At issue is appellant's complaint that the trial court erred by failing to sua sponte include an instruction in the punishment-

phase jury charge on the burden of proof required for extraneous offenses. On original submission, we noted that appellant failed to object to the absence of the instruction and held that, absent a request, the trial court was not required to instruct the jury on the burden of proof for extraneous offenses. *Brown v. State,* No. 2–98–248 CR, slip op. at 3 (Tex.App.—Fort Worth July 8, 1999, pet. granted) (not designated for publication).

After we issued our original opinion in this case, the court of criminal appeals held that a reasonable doubt instruction regarding extraneous offense evidence is "law applicable to the case" and therefore must be given at punishment, even if not requested. *Huizar v. State,* 12 S.W.3d 479, 483–84 (Tex.Crim.App.2000) (op. on reh'g). The court of criminal appeals granted appellant's petition for discretionary review on this issue, vacated our judgment, and remanded the cause to us for reconsideration of appellant's complaint in light of *Huizar. Brown v. State,* No. 1350–99, slip op. at 2 (Tex.Crim.App. Apr. 26, 2000) (not designated for publication).[1]

### Standard of Review

■ Because the requirement that evidence of extraneous offenses and other bad acts must be proven beyond a reasonable doubt is statutory, rather than constitutional, we review the erroneous failure to give a punishment-phase reasonable doubt instruction under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g). *Huizar,* 12 S.W.3d at 484–85; *see also* TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.2001) (providing that State and defense may offer punishment-phase evidence as to any matter the trial court deems relevant to sentencing, including but not limited to evidence of extrane-

ous crimes or bad acts shown beyond a reasonable doubt to have been committed by defendant or for which he could be held criminally responsible). Here, appellant did not object to the alleged error in the court's charge, so we must decide whether the error was so egregious and created such harm that he did not have a fair and impartial trial-in short, whether "egregious harm" has occurred. *Almanza,* 686 S.W.2d at 171; *see also* TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon 1981); *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim. App.1996).

■ In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171; *see generally Hutch,* 922 S.W.2d at 172–74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza,* 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch,* 922 S.W.2d at 171.

In his brief on remand, appellant complains the trial court's failure to give a reasonable doubt instruction at the punishment phase caused him egregious harm because he received a greater sentence than he would have if the court had given a reasonable doubt instruction. In his PDR, appellant contends that the failure to give a reasonable doubt instruction caused him egregious harm because there was conflicting evidence about whether he committed some of the extraneous offenses

---

1. The court of criminal appeals refused to review appellant's other ground, *id.,* slip op. at 2, so the extraneous offense instruction is the only issue on remand.

and there was no evidence linking him to other offenses.

### Punishment–Phase Evidence

At punishment, C.B., appellant and Blount's nine-year-old daughter, testified that appellant "called my momma a F and me an A-hole" when he got angry. C.B. further testified that appellant once got angry with her while they were eating at Denny's, picked up a knife, squeezed it, and told her to cut and eat her pancakes properly. C.B. felt threatened and afraid. C.B. said that, another time, she saw appellant wrap a telephone cord around Blount's neck and hold her down on the bed, covering her mouth and nose so she could not breathe. C.B. tried to help Blount get the cord off her neck, and, after the cord was off, appellant spit in Blount's face. Appellant never struck C.B., howeverer.

Officer P.B. Moore corroborated some of C.B.'s testimony. Moore responded to a family disturbance call, where he found C.B. outside some apartments, yelling that she needed him because her father was scaring her mother. Although Moore did not see appellant strike or threaten Blount, he saw that she had a cut, swollen, lower lip and two scratches on her jaw area that were consistent with someone having placed their hand on her face and pressed down. Appellant was arrested and taken to jail.

Appellant took the stand and admitted that the incident in Denny's occurred, but denied attempting to strangle Blount with a telephone cord. He also denied punching Blount in the face or kicking her with steel-toed boots on other occasions. However, he did not deny spitting on Blount or cursing at her and C.B. He also admitted ramming Blount's truck at least once, although he insisted he did not try to kill her. Appellant also admitted that Blount had obtained a protective order against him, which he had violated at least twice, and that he had to wear a monitor. In addition, appellant admitted that three of his friends had testified falsely on his behalf at the guilt-innocence phase of trial. Appellant admitted asking the friends to testify as alibi witnesses to "try to save my hide," but denied asking them to lie.

Finally, the prosecutor asked appellant about the time he lived or worked in Illinois:

Q. You said you never been in any trouble before?

A. Never.

Q. Did you work in Illinois?

A. Yes.

Q. A place called Arcus?

A. Yes, sir.

Q. Did you get in trouble when you worked in Arcus?

A. No, sir.

Q. What did you do for—

A. I was just a worker.

Q. Yeah, just a worker. Ever been arrested in Illinois?

A. No, sir. Maybe for tickets or something like that.

Q. Nothing involving theft?

A. No, sir.

. . . .

Q. Mr. Brown, just think about it while I'm looking for this. Think about anything that happened while you were at Arcus yet?

A. No, sir.

Q. Mr. Brown, I withdraw that question for a minute. Maybe while your lawyer is talking to you, I'll have a chance to find it.

. . . .

Q. All right. In 1989 where were you living?

A. In '89, living in the suburbs probably of Shaumberg.

Q. Do you know where Rolling Meadows is in Illinois?

A. Yes.

Q. Do you remember anything that happened in Rolling Meadows in 1989 now?

A. No, I couldn't remember anything that happened.

Q. You couldn't remember that?

A. I have no idea.

Q. Nothing?

A. No.

## Harm Analysis

■ In light of this evidence and the record as a whole, we do not believe appellant was egregiously harmed by the trial court's failure to give a reasonable doubt instruction at punishment. Keeping in mind that the error concerned the State's burden of proof, there can be little doubt of appellant's connection with most of the extraneous offenses themselves. For instance, appellant admitted threatening his daughter and violating a court order ordering him to stay away from Blount. In addition, the evidence is sufficient to show beyond a reasonable doubt that appellant strangled Blount, despite his testimony to the contrary. C.B.'s uncontradicted testimony is also sufficient to link appellant to the spitting and cursing incidents. Because appellant was sufficiently connected with these incidents, he was not harmed if the jury considered them in assessing punishment.

There is also sufficient evidence that appellant asked his friends to give him an alibi, even if he did not directly ask them to perjure themselves. Appellant admitted his friends "were called for the purpose of saying that [he was] with them" when the charged offense was committed, that he "asked these people to come down here and tell these people that [he was] not even there," and that he would do anything he could to save his hide. Appel-

lant also testified that he told his lawyer he was at the 2500 Club and gave him the names of people he was with, but did not talk to his friends about their testimony.

Further, we do not believe the exchanges between appellant and the prosecutor about his time in Illinois are evidence of extraneous offenses. The prosecutor formally withdrew his questions about whether appellant had been arrested for theft in Arcus and did not ask appellant whether he committed any specific offenses or bad acts in Rolling Meadows. Thus, we will not construe the prosecutor's questions as a factor in the jury's punishment deliberations. Moreover, the questions here were not like those asked in the cases cited in appellant's PDR, where the prosecutors asked the respective defendants at guilt-innocence whether they had committed very specific extraneous offenses that were nearly identical to the charged offenses, but made no attempt to link the defendants to the extraneous offenses. See Fentis v. State, 528 S.W.2d 590, 592 (Tex.Crim.App.1975) (where prosecutor asked defendant, who was charged with assault with intent to murder a peace officer, whether he was the same person who had been indicted in Houston for killing a police officer named Spruill in 1972); Tomlinson v. State, 422 S.W.2d 474, 475 (Tex.Crim.App.1967) (where prosecutor asked defendant, who was charged with passing a forged check, whether he was same person who had passed another forged check that was State's exhibit 3).

Finally, the jury's punishment verdict shows appellant was not harmed by the failure to give a reasonable doubt instruction because there is no indication that the lack of an instruction resulted in a greater sentence for appellant. Appellant asked the jury to give him probation for both offenses. The State argued that a sen-

tence of ten years or less would be "entirely inadequate" and asked the jury to assess punishment at the "high end" of the two-to-twenty-year range. The jury gave appellant probation for the aggravated assault by threats, which is what he requested, and three years' confinement for the aggravated assault with bodily injury. Considering the seriousness of the aggravated assault and the punishment-phase evidence clearly linking appellant to other bad acts or offenses against Blount and C.B., this sentence does not indicate that the jury assessed punishment based on extraneous offenses that were not adequately linked to appellant.

### Conclusion

Having reviewed the record and carefully considered appellant's arguments on remand and in his PDR, we conclude the trial court's failure to give a reasonable doubt instruction at punishment did not deprive appellant of a fair and impartial trial. Because there was no egregious harm to appellant, we overrule his point and affirm the trial court's judgment.