PD-1049-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/25/2015 6:19:15 PM
Accepted 8/28/2015 11:26:56 AM
ABEL ACOSTA
CLERK

## NO. PD-1049-15

IN THE

## COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

ALFRED CHARLES GREEN
PETITIONER

v.

THE STATE OF TEXAS
RESPONDENT

## TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Petitioner, ALFRED CHARLES GREEN, Defendant in Cause No. 366-82982-2011 out of the 366th Judicial District Court, Collin County, Texas and Appellant before the Court of Appeals for the Eighth District at El Paso, Texas, in Cause No. 08-13-00308-CR, respectfully presents to this Honorable Court its Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

The Petitioner does believe oral argument will aid this Court in the disposition of these cases.

*Appellant's Original Brief*                                  *Page 1 of 27*

## NAMES OF PARTIES

Pursuant to Tex. R. App. P. Rule 68.4(a), the following is a complete list of the parties and persons interested in the outcome of this cause:

(A)  ALFRED CHARLES GREEN,  the Appellant;

(B)  CARLTON HUGHES, Counsel for Appellant at Trial; 118 Lynn Avenue, Suite 304, Lewisville, Texas 75057.

(C) MARC J. FRATTER, Counsel for Appellant on Appeal; Law Office of Marc J. Fratter, 1207 West University Drive, Suite 101, McKinney, Texas 75069.

(D)  THE STATE OF TEXAS, the Appellee, by and through Greg R. Willis, Collin County District Attorney, Lindsey B. Wynne and Abigail N. Policastro, Assistant Criminal District Attorneys, Counsels for Appellee at Trial, and John R. Rolater, Assistant Criminal District Attorney and Chief of Appellate Section and Libby J. Lange, Assistant Criminal District Attorney, Appellate Section, Counsels for Appellee on Appeal; Collin County Courthouse, Office of the District Attorney, 2100 Bloomdale Road, Suite 100, McKinney, Texas 75071.

(E)  THE HONORABLE RAY WHELESS, 366th Judicial District Court Judge and Presiding Judge of Appellant's Trial.

# TABLE OF CONTENTS

**LIST OF AUTHORITIES**…………..…………………….……………4-5

**STATEMENT OF THE CASE**……………..…...…….……………6-13

**STATEMENT OF THE PROCEDURAL HISTORY**……………....13-14

**QUESTIONS/GROUNDS FOR SOLE GROUND OF REVIEW**……….14

**THE PANEL ERRED WHEN IT CONCLUDED THAT APPELLANT WAS NOT EGREGIOUSLY HARMED AFTER APPLYING THE FOUR FACTORS ORIGINALLY SET OUT IN *ALMANZA*.**

**REASON FOR REVIEW**……………….……………………...……14-25

**The Court of Appeals decision departed so far from the accepted and usual courts of judicial proceedings, and sanctioned such a departure by a lower court, as to call for the exercise of the Court of Criminal Appeals power of supervision.**

**CONCLUSION**……………………………….………….……...…26

**CERTIFICATE OF SERVICE**……………………..…….……...........27

**CERTIFICATE OF COMPLIANCE**...........................................27

# LIST OF AUTHORITIES

## CASES

Allen v. State, 47 S.W.3d 47 (Tex.App.-Fort Worth, 2001, pet. ref'd)….....17-18

Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App.1984)
(op. on reh'g)……………………………………………….........…18-19

Barrios v. State, 283 S.W.3d 348 (Tex.Crim.App.2009)………………….15, 18
12
Brown v. State, 45 S.W.3d 228 (Tex.App.-Fort Worth 2001)
(pet. ref'd)………………………………………………….…..15, 18-19

Caldwell v. State, 971 S.W.3d 663 (Tex.App.-Dallas 1998, pet. ref'd)……..15

Delgado v. State, 235 S.W.3d 244 (Tex.Crim.App.2007)…………………15

Ellison v. State, 97 S.W.3d 698 (Tex.App.-Texarkana 2003, no pet.)….…18-20

Fields v. State, 1 S.W.3d 687 (Tex.Crim.App.1999)……………………....16

Frazier v. State, 15 S.W.3d 263 (Tex.App.-Waco 2000, no pet.)……………..19

Huizar v. State, 12 S.W.3d 479 (Tex.Crim.App.2000)(op. on reh'g)……..16-17

Hutch v. State, 922 S.W. 2d 166 (Tex.Crim.App.1996)……………….......18

Lee v. State, 29 S.W.3d 570 (Tex.App.-Dallas 2000, no pet.)…...……….18

Malik v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997)…………........15

Martin v. State, 42 S.W.3d 196 (Tex.App.-Fort Worth 2001
(pet. ref'd)………………………………………………………19

Plata v. State, 926 S.W.2d 300 (Tex.Crim.App.1996)………………….....15

Rodriguez v. State, 758 S.W.2d 787 (Tex.Crim.App.1988)……………….…….18

Taylor v. State, 970 S.W.2d 98 (Tex.App.-Fort Worth 1998, pet ref'd)……..17

**STATUTES**

Tex.Code Crim. Proc. Ann. art. 36.14…………………………….……....15

Tex.Code Crim. Proc. Ann. art. 36.19…………………………….…...…....19

Tex.Code Crim. Proc. Ann. art. 37.07…………………………...……16-18

# STATEMENT OF THE CASE

Following the close of the evidence and after the Jury had retired to the Jury Room, Counsel for State, Ms. Policastro, submitted a proposed Charge of the Court for the guilt-innocence phase of the trial. (RR3—178; CR—58-62) On the three instances where the Court asked Counsel for Appellant if there were any objections to the guilt-innocence Charge of the Court, Counsel for Appellant indicated "No objections". (RR3—178-179; RR4—5) The guilt-innocence Charge of the Court contained the following specific written instruction which was also read by the Court to Jury: "You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed, and even then you may only consider the same in determining the intent, knowledge, or identity of the defendant, if any, in connection with the offense, if any, alleged against him in this case, and for no other purpose." (CR—60; RR4—7)

Following the Jury's verdict of "guilty" to the offense of Aggravated Assault as alleged in the Indictment, the punishment phase of the trial commenced with Counsel for State, Ms. Policastro, reading to the Jury the file-marked (September 5, 2013) *State's Notice of Intent to Use Prior Convictions for Enhancement*.(CR—43-44, 58-62; RR4—30-32, 35)[3] The State sought enhanced punishment under the habitual offender provision of Texas Penal Code Section 12.42(d), making the range of punishment, if the Jury found the enhancement paragraphs to be true, twenty-five (25) to ninety-nine (99) years or Life in the Texas Department of Criminal Justice. (CR—43; RR4—35) Counsel for Appellant, on behalf of Appellant, entered a plea of "Not True" to the enhancement paragraphs. (RR4—35)

The following represents the exchange between the Court, Counsel for Appellant and Counsel for State:

> THE COURT: Thank you. Do you wish to make an opening statement?
>
> MR. HUGHES: Not at this time, Your Honor.
>
> THE COURT: All right. You may call your first witness.

---

[3] The following final felony convictions were provided in the State's notice: Felony conviction on July 24, 2000, Cause Number 414-751, Attempted Possession of Cocaine; Felony conviction on October 23, 2007, Cause Number 467-369, Possession of Crack

MS. POLICASTRO:   Your Honor, we offer State's Exhibit 11, a stipulation of facts signed by the Defendant, the Defense Attorney and the Defendant alleging that the person who signed this is the same one referenced in State's Exhibit 12, who was also the same person as charged in this case.

THE COURT:   Any objection?

MR. HUGHES:   No, Your Honor.

THE COURT:   It is admitted.

MS. POLICASTRO:   And we then offer Exhibit 12, the penitentiary pack from the Office of Probation and Parole in Louisiana, a certified copy of that probation packet.

THE COURT:   Any objection?

MR. HUGHES:   No objection, Your Honor.

THE COURT:   It is admitted.

(RR4—36-37; RR5—SE#11, SE#12)

During the cross-examination /re-cross examination of Appellant by the State during the guilt-innocence stage and the punishment stage there are instances where Appellant appears to admit a pen-trip, dispute a pen-trip, admit then dispute a pen-trip, and dispute then admit a pen-trip; for other "extraneous

offenses" such as the allegation of Murder, and the "bad acts" evidence brought up by the State the Appellant adamantly and consistently denied. (RR3—162-176; RR4—44-59) And, while Appellant acknowledges a pen-trip for the State's second enhancement paragraph, he denies a pen-trip for the State's first enhancement paragraph; however, Appellant affirms a pen-trip sometime in the 1980s but it is not in any manner connected to either of the State's enhancement paragraphs. (CR—43-44; RR3—162-176; RR4—44-59)

Please note that the Punishment Charge **did not** contain the instruction on the statutorily prescribed reasonable-doubt standard of proof concerning extraneous offenses or bad acts evidence. (CR—63-67; RR4—59)

The following excerpts taken from the final argument at the punishment phase of Counsel for State and the final argument in full by Counsel for Appellant are considered by Appellant to be the most probative in this Court's determination of whether or not Appellant suffered egregious harm:

The following represents the most critical exchange between the Court, Counsel for Appellant, and Counsels for State[5] and it begins after the Jury has

---

[5] REFERENCE TO **STATE1** IS TO ASSISTANT CRIMINAL DISTRICT ATTORNEY POLICASTRO; **STATE2** IS TO ASSISTANT CRIMINAL DISTRICT ATTORNEY WYNNE; **APPELLANT** IS TO APPELLANT'S COUNSEL HUGHES

retired for punishment phase deliberations at 2:10 PM and, at 2:25 PM, the Jury sends a note to the Court:

THE COURT: Come on up. We have a note from the jury. I believe there's a mistake in the Jury Charge. There's a note from the jury, and I think that right here is the Charge. It's got September of 2011. I think that should be 2013. Isn't that—

STATE1: Yeah.

THE COURT: I noticed an enhancement was filed on September 2013.

STATE1: There's two of them.

STATE2: I'm worried that this is the—

THE COURT: That's the one that we gave to them. That's the one I read to them. So, my answer to the jury is, yes, it's an incorrect date. The correct date should be September.

STATE1: There are two paragraphs where it says that, though, the second and the third paragraph, but let's just—

STATE2: Yeah, but you know what? We have a problem.

STATE1: It doesn't have this one there.

STATE2: And this paragraph's not going to be right either.

STATE2: We have handed in the other version. We had an edited version, but it had all things.

THE COURT: Okay. Well, the one I had on my desk up here --so there's the note. Does that make it correct, as far as telling them that the correct date is September 5, 2013?

STATE2: Yes, Your Honor.

THE COURT: So that will correct that then.

STATE2: Yes.

THE COURT: Okay. So does that—the State agrees to send that response back to the jury?

STATE1: It does. Your Honor.

THE COURT: And you agree, also?

APPELLANT: Yes, I do.

THE COURT: Then I'll send that response back to the jury, and then we'll wait on their verdict.

THE COURT: Did you need to see me?

STATE2: Yes, Your Honor.

THE COURT: Y'all come on up to the bench. We'll wait for Mr. Green to come out here.

STATE1: Basically what happened, we both had an amended one, and we handed you one of the draft ones purely by accident. We both argued the one that was proper with all the law. And particularly the new one has the extraneous offenses, all we would need to do is just re-Charge the jury, say the wrong one was read, and then—because nothing about the law changes,

it's what we both—

THE COURT: Well, when I asked if there were any objections to the Charge, you obviously didn't object. The State didn't object because you had prepared the Charge and handed it to the Court, correct?

STATE1: Right.

THE COURT: So you didn't object to it because you handed me the wrong Charge.

STATE1: We had a different one than we handed you.

THE COURT: And you didn't object at all to the Charge.

APPELLANT: Because it was this one.

THE COURT: Okay. The Charge that's currently back in the jury room that the jury has, do you object to that Charge?

APPELLANT: No, not necessarily.

THE COURT: You don't have an objection. So the only objection is by the State.

STATE2: It improperly charges them on the law. It also fails to put in the extraneous offense requirement that, especially since it came in, it's necessary for them—

THE COURT: Well, the evidence is closed. The Court charged the Jury. The jury's deliberating. So, the request to bring the jury back in and change the Charge, read them a new Charge, is overruled and denied.

APPELLANT: Okay.

THE BAILIFF:     We have a verdict.

THE COURT:     We have a verdict on top of that.

THE COURT:     We are ready for the jury. We just need Mr. Green in here.

STATE2:     Your Honor, can we re-approach the issues on the Jury Charge?

THE COURT:     Well, we have a verdict right now.

STATE2:     Okay.

THE COURT:     So we're about to wrap this up, and then anybody who is not happy with the outcome can file a Motion for New Trial.

STATE2:     All right.

(RR4—66-70; CR—63-67)

## STATEMENT OF THE PROCEDURAL HISTORY

This case is on appeal from the 366th Judicial District Court of Collin County, Texas. After a Jury Trial, Appellant was convicted of the offense of Aggravated Assault with a Deadly Weapon. Appellant was sentenced to twenty-five (25) years in the Institutional Division of the Texas Department of Criminal Justice. Notice of appeal was given on September 18, 2013. Appellant filed his original brief on the merits on February 18, 2014. The State of Texas filed its brief on the merits on April 21, 2014. Appellant filed his

reply brief to the State's brief on the merits on May 12, 2014. The 8th Court of Appeals set the case for submission on briefs on November 17, 2014 and then on May 13, 2015 affirmed the Trial Court's ruling and issued an unpublished Memorandum Opinion. On June 23, 2015 the Court of Appeals denied Appellant's Motion for Rehearing and Motion for En Banc Reconsideration. Finally, on August 17, 2015, the Court of Criminal Appeals granted Appellant's request for the extension of time (no later than August 28, 2015) to file his Petition for Discretionary Review.

## QUESTIONS/GROUNDS FOR SOLE GROUND OF REVIEW

**THE PANEL ERRED WHEN IT CONCLUDED THAT APPELLANT WAS NOT EGREGIOUSLY HARMED AFTER APPLYING THE FOUR FACTORS ORIGINALLY SET OUT IN *ALMANZA*.**

## REASON FOR REVIEW

**The Court of Appeals decision departed so far from the accepted and usual courts of judicial proceedings, and sanctioned such a departure by a lower court, as to call for the exercise of the Court of Criminal Appeals power of supervision.**

STANDARD OF REVIEW, AUTHORITIES AND ARGUMENT

The facts relevant to this issue are set out in the Statement of Facts and are incorporated herein.

***Applicable Law and Standard of Review/Court Charge Error***

The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in applying the law to facts of the case. *See Delgado v. State,* 235 S.W.3d 244, 249 (Tex.Crim.App.2007); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (trial court shall give jury "a written charge distinctly setting forth the law applicable to the case"). When reviewing claims of jury-charge error, we first determine whether an error actually exists in the charge. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App.2009). In making this determination, we examine the charge as a whole, considering the workable relationship between the abstract paragraphs of the charge-the instructions and the definitions-and those applying the abstract law to the facts. *Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App.1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997); *Caldwell v. State*, 971 S.W.3d 663, 666 (Tex.App.-Dallas 1998, pet. ref'd). The abstract of definitional portions of the charge help the jury understand the meaning of concepts and terms used in the

application paragraphs of the charge. *Caldwell*, 971 S.W.2d at 666. A charge is adequate if it contains an application paragraph that authorizes a conviction under conditions specified by other paragraphs of the charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of those paragraphs. *Id.*

Texas Code of Criminal Procedure, article 37.07, section 3(a) governs the admissibility of punishment phase extraneous offenses and bad acts evidence. It provides, in part: "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing...*and notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, **any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act**.*" TEX.CODE CRIM. PROC. ANN. art 37.07, § 3(a) (Vernon Supp.2001) (emphasis added). Pursuant to article 37.07, section 3(a), evidence of extraneous offenses or bad acts may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that such

offenses are attributable to the defendant. *Id.*; *see also Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App.2000)(op. on reh'g); *Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.1999) Once the fact-finder is satisfied beyond a reasonable doubt that such offenses or acts are attributable to the defendant, the fact-finder may use the extraneous offenses or bad acts evidence however it chooses in assessing punishment. *Huizar*, 12 S.W.3d at 484; *see also Taylor v. State*, 970 S.W.2d 98, 101-02 (Tex.App.-Fort Worth 1998, pet ref'd) (trial court gave proper punishment phase reasonable-doubt instruction concerning extraneous offenses evidence).

Texas Code of Criminal Procedure article 37.07, section 3(a)'s requirement that the jury be satisfied of the defendant's culpability of the extraneous offenses or bad acts is "law applicable to the case" in the non-capital punishment context. *Huizar*, 12 S.W.3d at 484. Thus, the trial court is required, when punishment phase evidence of extraneous offenses or bad acts evidence is admitted, to *sua sponte* instruct the jury on the reasonable-doubt standard of proof concerning the extraneous offenses and bad acts. *Id.* at 483-84. Appellate Courts have repeatedly held that a trial court's failure to submit an instruction to the jury at the punishment phase on the reasonable-doubt standard of proof concerning extraneous offenses or bad acts evidence is error.

*Id.*; *Fields*, 1 S.W.3d at 688; *Brown v. State*, 45 S.W.3d 228 (Tex.App.-Fort Worth 2001, pet. ref'd); *Allen v. State*, 47 S.W.3d 47 (Tex.App.-Fort Worth, 2001, pet. ref'd); *Ellison v. State*, 97 S.W.3d 698 (Tex.App.-Texarkana 2003, no pet.)

Because the requirement that evidence of extraneous offenses and other bad acts must be proven beyond a reasonable doubt is statutory, rather than constitutional, we review the erroneous failure to give a punishment-phase reasonable doubt instruction under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)(op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex.Crim.App.1988) (if error exists and was preserved, reversal required if error caused "some harm" to appellant from the error); *Barrios*, 283 S.W.3d at 350. When there is no objection to the error at trial, we will not reverse for jury-charge error unless after reviewing the entire record we determine the error was so egregious and created such harm that appellant did not receive a fair and impartial trial. *See Hutch v. State*, 922 S.W. 2d 166, 171 (Tex.Crim.App.1996); *Almanza*, 686 S.W.2d at 171; *Barrios*, 283 S.W.3d at 350; *see also* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981).

Egregious harms consists of those errors that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for punishment clearly and significantly more persuasive. *Lee v. State*, 29 S.W.3d 570, 578 (Tex.App.-Dallas 2000, no pet.). In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza* at 171; *Ellison*, 97 S.W.3d at 701; *see generally Hutch*, at 172-74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza* at 174. Finally, egregious harm is difficult to prove and is determined on a case-by-case basis. *Brown*, 45 S.W.3d at 230.

The State will likely cite to several cases where the Courts have held that failure to give the reasonable doubt instruction at the punishment phase of the trial was not harmful. *See Allen*, 47 S.W.3d at 47; *Brown*, 45 S.W.3d at 228; *Martin v. State*, 42 S.W.3d 196 (Tex.App.-Fort Worth 2001, pet. ref'd); *Frazier v. State*, 15 S.W.3d 263 (Tex.App.-Waco 2000, no pet.). But in all these cases, the prior offenses and bad acts of the defendant were proven by overwhelming evidence and were largely undisputed. *Ellison* at 701. In reaching its

conclusion that the trial court's failure to give the reasonable-doubt instruction at the punishment phase caused Ellison egregious harm, the *Ellison* Court found the "highly inflammatory and prejudicial nature of the disputed conduct by Ellison [Appellant] likely had a serious influence on the jury's assessment of punishment. It is also likely…that the jury was more prone to give consideration and weight to these disputed extraneous activities in the absence of an instruction that they must find them true beyond a reasonable doubt, than they would have if such an instruction had been given." *Id.*

## *Discussion*

To begin there are at least four undisputed facts: (1) the Court's charge at the guilt-innocence stage contained the statutorily prescribed reasonable-doubt standard of proof concerning extraneous offenses or bad acts evidence; (2) the Punishment Charge read by the Court to the Jury at the punishment stage did not contain the statutorily prescribed reasonable-doubt standard of proof concerning extraneous offenses or bad acts evidence; (3) after the Punishment Charge was read to the Court but before the verdict was returned the State of Texas, by its Assistant District Attorneys Policastro and Wynne, alerted the Court that a "draft" charge had been mistakenly read, acknowledged that it improperly charged the Jury on the law and failed to put in the extraneous

---

offense instruction, and requested the Court re-charge the Jury; and (4) despite Counsel for Appellant being alerted to the State's position that the Jury had been improperly charged on the law and the charge lacked an extraneous offense instruction, and being specifically asked by the Court if Counsel for Appellant was joining the State in its request to re-charge the jury and subsequent objection to the Court's denial of the same, Counsel for Appellant replied, "No, not necessarily." The Court re-confirmed that Counsel for Appellant had no objection and also restated that the only objecting party to the Court's charge was the State of Texas—to be true, and admittedly the record is silent on this, but it can only be imagined that the utter confusion created by the reversal of roles here when the State of Texas is advocating for an instruction clearly favoring the Appellant while the continued silence and disinterest throughout the entire trial of Appellant's own Counsel had undoubtedly helped "put the nail(s) in the coffin." These four (4) undisputed facts lead to at least one undisputed legal conclusion: Failure of the Trial Court to include the statutorily prescribed reasonable-doubt standard of proof for extraneous offenses and bad acts evidence was error.

The Punishment Phase of Appellant's trial can be summarized in the following manner: An interaction and exchange between the Court, Counsel for

Appellant, and Counsels for State illustrated by misstatements, misunderstandings, contradictions and outright confusion of the law and application paragraphs of the Punishment Charge. To begin, Appellant, Counsel for Appellant and Counsel for State signed a written stipulation in State Exhibit #11that acknowledged Appellant as the same person identified in State's Exhibit #12, the "pen packet" and criminal history records. However, on behalf of Appellant, Counsel for Appellant pled "Not True" to both enhancement paragraphs; yet, Counsel for State refers to the written stipulation as an automatic plea of "True" to both enhancement paragraphs and admission of "guilty" to the more than thirty (30) reported criminal offenses. In short, as you will see, Appellant did not merely suffer egregious harm in this case but suffered it both abundantly and consistently.

It can only be assumed that when the Jury has been instructed by the Court to only consider the law contained in the Charge(s) of the Court that the Jury did consider only that law. When the guilt-innocence phase charge contains an "extraneous offense/bad acts" instruction but the punishment phase charge does not, it should likewise be safe to assume the Jury did not apply any legal standard when considering the over thirty (30) instances of extraneous offenses or variety of bad acts admitted at the punishment phase. What else

could the presence of the instruction in the guilt-innocence charge but the absence in the punishment charge lead one to conclude? One answer: the instruction was deleted from the punishment charge because the Jury no longer applies this standard at the punishment stage. In fact, one could only imagine the thought process of any Juror who is given the correct instruction at the guilt-innocence stage when only a handful of extraneous offenses/bad acts evidence was admitted through testimony only to receive absolutely no written instruction at the punishment stage on how to consider thirty (30) years of criminal history and over thirty (30) unsubstantiated instances of extraneous offenses/bad acts scattered over six (6) typewritten pages. No extraneous offense/bad acts instruction encourages the assumption and simple conclusion that Appellant is "on the hook" for each and every instance of "bad" conduct that was discussed at the Punishment Phase---no law necessary to apply here. And, to make matters even worse, with no instruction and the arguments of Counsel for the State that included the following instances of absolute misstatements of law and fact, there is no doubt that it weighed quite heavily in favor of the Jury's assessment of Appellant's sentence.

It must also be noted that based on the recommendations of Counsel for State at its final summation concluding the Punishment Stage of the trial, the Jury could have reached its 25-year sentence by finding at least one of the two felony enhancement paragraphs to be "True" and any other felony it felt that Appellant was tied to from 1977 to 2007. The obvious and main problem here is that the only reasonable-doubt standard of proof instructions applied to the offenses alleged in the State's Notice of Enhancement; whether or not Appellant admitted to another pen-trip, another felony, another offense, or any other "bad act" there was no instruction for the Jury to consider in its evaluation—multiply that by thirty (30) or more instances of extraneous offenses and a variety of bad acts, and the result is: Egregious Harm. The lack of an "extraneous offense/bad acts" reasonable-doubt instruction on its own does not always rise to level of egregious harm and understandably so. But in this case the lack of the instruction coupled with the quantity, severity, and overall time-span of all the alleged offenses and bad acts, mostly disputed and also denied by Counsel for Appellant when first announced to the Jury, along with the argument of Counsel for State, the error was so egregious and created such harm that appellant did not receive a fair and impartial trial. Finally, what more to confirm the egregious nature of this harm than the State's own

words to the Trial Court Judge: *"Yeah, but you know what? We have a problem…We have handed in the other version. We had an edited version, but it had all things… It improperly charges them on the law. It also fails to put in the extraneous offense requirement that, especially since it came in, it's necessary for them…"* And, the State was so troubled by the defective charge and the harm it would cause Appellant it was the State, and sadly only the State, that urged the request to re-read the correct and proper charge and objected to the Court not doing so. It was at that specific moment of the trial when the only effective assistance of counsel being afforded to Appellant was from the State of Texas, his adversary. It seems self-evident that when the record reflects the State of Texas is advocating for the protection of the Appellant's statutory/constitutional rights far more forcibly and passionately than Appellant's own attorney, the harm suffered by Appellant must be egregious. Therefore, Appellant is entitled to at the very least a new hearing on the punishment phase of his trial.

## CONCLUSION

For the reasons alleged herein, the Court of Appeals erred in affirming the conviction of the Petitioner. The Petitioner prays this Court will grant this petition and, upon reviewing the judgment entered below, reverse the Court of Appeals and reverse the Trial Court's judgment of conviction.

Respectfully Submitted,


/s/ Marc J. Fratter

Law Office of Marc J. Fratter
mfratter@yahoo.com
Bar No. 24029973
1207 West University Drive, Ste. 101
McKinney, Texas 75069
Tel. (214) 471-3434
Fax (972) 692-5600

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2015, a true copy of the foregoing Petition for Discretionary Review has been served on the Collin County District Attorney at 2100 Bloomdale Road, Suite 100, McKinney, Texas 75071, by hand delivery, and on the State of Texas, Prosecuting Attorney, Lisa C. McMinn, at P.O. Box 13046, Capitol Station, Austin, Texas 78711, by United State certified mail, return receipt requested.

/s/ Marc J. Fratter_____
Marc J. Fratter

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 9.4(i)(3) and 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure the undersigned counsel certifies that the total word count of the *Petition for Discretionary Review* filed in the above cause according to MS Word is **4,488**.

/s/ Marc J. Fratter_____
Marc J. Fratter



ALFRED CHARLES GREEN,

§

Appellant,

§

v.

§

THE STATE OF TEXAS,

§

Appellee.

§

§

§

§

No. 08-13-00308-CR

Appeal from the

366th Judicial District Court

of Collin County, Texas

(TC# 366-82982-2011)

## **O P I N I O N**

Mistakes sometimes happen in the heat of trial. During the punishment phase of the trial, the prosecutor handed an older draft of the jury charge to the trial judge which was then read to the jury. The older draft omitted a statutorily required instruction. The mistake was not caught until just before the jury announced that it had reached a verdict. The trial court proceeded to receive the verdict. Appellant, with new counsel, complains of that verdict and of the actions of his trial attorney. For the reasons set forth below, we affirm.[1]

## **FACTUAL SUMMARY**

Appellant was charged and convicted of aggravated assault with a deadly weapon. No error is raised with regard to the guilt-innocence phase of the trial, and we need not recite in

---

[1] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

detail the underlying facts of the crime. In short summary, his estranged wife claimed he threatened her with a knife. He in turn claimed that she was the aggressor. The jury believed the estranged wife and found Appellant guilty of aggravated assault.

The punishment phase ensued. The State had provided notice that it intended to seek an enhancement of Appellant's potential sentence under the habitual offender provisions of TEX.PENAL CODE Ann. § 12.42(d)(West Supp 2014). Specifically, the State contended that Appellant was convicted of two prior felony charges: a July 24, 2000, conviction for attempted possession of cocaine; and an October 23, 2007, conviction for possession of crack cocaine. Appellant pled "not true" to those counts.

The State tendered a Stipulation of Facts, signed by Appellant and his attorney, acknowledging that he was the same person as referenced in State's Exhibit 12. Exhibit 12 consisted of a penitentiary packet from Louisiana. In addition to the two specific prior convictions claimed in the notice of enhancement, the packet contained references to a number of other prior arrests and charges. Both the stipulation and the penitentiary packet were admitted without objection.

Appellant testified in both the guilt-innocence and punishment phases of the trial. He was asked about his prior convictions both times. At the punishment phase, he recalled going to the penitentiary in the 1980s for possession of a stolen vehicle. He also recalled going back to the penitentiary in 2007 after getting mixed up with the "wrong guys" who were selling drugs. When asked about his 2000 conviction, his recollection was initially conflicting. When confronted with the charge, he first said, "No, that's -- that don't sound right." He remembered some kind of conviction in 2000, but initially thought he served the time in the Orleans Parish Prison. When asked specifically about whether he served a 30 month sentence, he testified that

2

he was convicted for possession of cocaine "just one time." After being reminded of his stipulation, he testified that "You know, it's been a while, but I did time for each one of them." He was shown State's Exhibit 12, and after reviewing a portion of the document was asked:

> Q. (BY MS. POLICASTRO) Mr. Green, I'm showing you part of State's Exhibit 12. It is the page that is in that attempted -- or the possession of cocaine from the offense date of the 24th of July of the year 2000. And, in fact, you were convicted by a jury of your peers in that one, and you were sentenced to probation, but then were revoked from probation on January 4th, 2001. Do you remember doing that?
>
> A. Yes, I think so.
>
> Q. Okay. And that is where they sent you to 30 months at the Orleans Parish Prison. Do you remember that?
>
> A. Yes.
>
> Q. Okay. So does that help remind you of when you were sent that time?
>
> A. Yes, ma'am.

In the guilt-innocence phase, Appellant was also asked about his prior convictions. He admitted being convicted twice. He testified to going to prison in 2007 for drug possession. He was asked about another charge in 2000 which sent him to prison. He recalled two offenses in 2000, one of which was dropped. When directly asked if he was convicted in 2000 for crack or cocaine, he said he could not understand the question, but knew he had been to prison twice.

The charge in the penalty phase tracked the notice of enhancement and in relevant part read:

> In penalty paragraph one of the State's Notice of Enhancement, filed on the 5th day of September, 2011, it is alleged that . . . the defendant was convicted of the felony offense of Attempted Possession of Cocaine in the Criminal District Court of Orleans Parish, Louisiana, on or about the 24th day of July, 2000.
>
> In penalty paragraph two of the State's Notice of Enhancement, filed on the 5th day of September, 2011, it is alleged . . . the defendant was convicted of

3

the felony offense of Possession of Crack in the Criminal District Court of Orleans Parish, Louisiana, on or about the 23rd day of October, 2007.

You are instructed that if you find beyond a reasonable doubt that this defendant is the same person who was convicted in each of the cases alleged in the two penalty paragraphs contained in the indictment and that such convictions occurred as alleged, then you will find the allegations in penalty paragraphs one and two are true and so state in your verdict, and you will assess punishment at confinement in the Institutional Division, of the Texas Department of Criminal Justice for Life or for any term not more than ninety nine (99) years or less than twenty five (25) years.

But if you do not find from the evidence beyond a reasonable doubt that the allegations in both of the penalty paragraphs are true and that this defendant is the same person who was convicted in both such cases, you will next proceed to consider the question whether the defendant has been convicted one before of a felony [sic].

The jury charge then provided separate questions and punishment ranges if the jury found only one of the two prior convictions true, or neither of the prior convictions true.[2]

The jury sent out a note during its deliberations asking if the charge had a typographical error; the charge referred to a State's Notice of Enhancement dated September 5, 2011 when the actual date was September 2013. The trial judge sent back a note confirming the error in the date. But as the prosecutors looked at the charge, they apparently realized that an earlier draft had mistakenly been given to the judge, which the judge then used to charge the jury. And in addition to the typographical error with the date, that earlier draft omitted an instruction on prior offenses:

You are instructed that if there is any testimony before you in this case regarding the defendant's [sic] having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed, and even then you may only consider the same in determining the intent, knowledge, or identity of

---

[2] If only one of the counts was true--that is, he had only one prior felony--the statutory penalty ranged from five years up to 99 years or life. If neither count was true, the punishment range for aggravated assault ranged from two to twenty years.

4

the defendant, if any, in connection with the offense, if any, alleged against him in this case, and for no other purpose.

The prosecutor then asked that the jury be given the correct charge. When asked if he objected to the incorrect charge, Appellant's counsel said "No, not necessarily." The trial court then denied the State's request to re-charge the jury.[3] And just as this exchange took place, the jury sent out a note that they had reached a verdict.

The jury found both paragraphs were true, but sentenced Appellant to the lowest amount of time possible for a person twice convicted before of a felony (25 years), and assessed no fine.

Appellant is represented by different counsel on appeal. His brief raises two issues for our review. In Issue One, he contends the trial court erred in not *sua sponte* including the beyond-a-reasonable-doubt instruction for prior convictions. In Issue Two, he claims he was denied effective assistance of counsel at trial, because his trial counsel did not notice the omission himself, or act affirmatively to remedy the error once it came to everyone's attention. We address these issues in turn.

## CHARGE ERROR

Appellate review of charge error involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013); *Abdnor*, 871 S.W.2d at 731. When determining whether the charge is erroneous, we

---

[3] "[State's attorney]: It improperly charges them on the law. It also fails to put in the extraneous offense requirement that, especially since it came in, it's necessary for them --

THE COURT: Well, the evidence is closed. The Court charged the jury. The jury's deliberating. So the request to bring the jury back in and change the Charge, read them a new Charge, is overruled and denied."

consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S .W.2d 330, 339 (Tex.Crim.App. 1995).

In this case, there is no dispute that the charge contained an error. TEX.CODE CRIM.PROC.ANN. art 37.07, § 3(a)(West Supp. 2014) provides that in the punishment phase of a non-capital case, the jury should not consider prior extraneous crimes or bad acts unless it is satisfied beyond a reasonable doubt that such offenses are attributable to the defendant. The Court of Criminal Appeals in *Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App. 1999) and *Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App. 2000)(op. on reh'g) interpreted this provision to require a trial court to *sua sponte* include an instruction informing the jury of this requirement. A trial court need not give a beyond-a-reasonable-doubt instruction concerning extraneous offenses when those offenses resulted in either a final conviction, probation, or deferred adjudication. *Bluitt v. State,* 137 S.W.3d 51, 54 (Tex.Crim.App. 2004). But the penitentiary packet introduced by the State here contained references to multiple arrests and charges that never resulted in a final conviction. Accordingly, the State does not contest the charge required the missing instruction.

Having found error, we must next determine whether sufficient harm resulted so as to require reversal. *Wooten*, 400 S.W.3d at 606. Under this second prong, we first determine if the defendant properly preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). If the defendant failed to object to non-constitutional error in the charge, as in this case, reversal is required only if the error is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Sakil v. State*, 287 S.W.3d 23, 26 (Tex.Crim.App. 2009).

"An egregious harm determination must be based on a finding of actual rather than

6

theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2011). Actual harm is established when the erroneous jury instruction affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Cosio*, 353 S.W.3d 777, *citing Almanza*, 686 S.W.2d at 171.

We look to four factors to determine whether an appellant was egregiously harmed by an erroneous jury instruction: (a) the entire jury charge; (b) "the state of the evidence[,] including contested issues and the weight of the probative evidence;" (c) the parties' arguments; and (d) all other relevant information in the record. *Cosio*, 353 S.W.3d at 777 [Citations omitted]. This analysis, first articulated in *Almanza*, is fact specific and done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex.Crim.App. 2013).

*The Charge*

The charge as whole does not lead us to conclude the error was egregious. Appellant points out that the guilt-innocence charge contained the Article 37.07 instruction, while the punishment phase omitted it. From this, Appellant reasons that the jury could have believed that the omission was intentional and invited them to consider prior bad acts on something less than the beyond-a-reasonable-doubt-standard. But the jury was asked a specific question: Was the enhancement paragraph true? That paragraph limited the jury's consideration of prior convictions to two particular convictions, one in 2000 and one in 2007. The jury was specifically instructed that they could not find the paragraph true unless it believed "beyond a reasonable doubt" that Appellant was "the same person who was convicted in each of the cases alleged in the two penalty paragraphs contained in the indictment and that such convictions occurred as alleged . . . ." Each succeeding question in the charge also required proof of any

7

prior conviction beyond a reasonable doubt. Because the enhancement question itself incorporated the beyond a reasonable limitation, this factor weighs against egregious error.

*State of the Evidence*

Here we look to the state of the evidence to determine whether it more or less likely that the jury charge caused Appellant actual harm. *See, e.g., Ngo v. State*, 175 S.W.3d 738, 751-52 (Tex.Crim.App. 2005). We recognize that Appellant's testimony reflects some confusion about the dates and descriptions of some of the prior convictions. He was certain he had received two prior state prison terms. He had no confusion about his more recent 2007 conviction. He was unsure about the 2000 conviction until he was shown a document which refreshed his recollection. Once he reviewed the document, he agreed he was convicted in 2000 as reflected in the enhancement paragraph. The penitentiary packet itself clearly indicated that Appellant was convicted on both of the charges reflected in the enhancement paragraph.

Appellant and his counsel stipulated that he was the same person referenced in State's Exhibit 12. That particular exhibit documents both of the prior convictions set out in the enhancement question. A defendant in a criminal case may stipulate to evidence against him. *Bryant v. State*, 187 S.W.3d 397, 400 (Tex.Crim.App. 2005). The stipulation "is a kind of judicial admission." *Id*. at 400. And once stipulated, the State was relieved of its burden of proving the matters contained in the stipulation. *Id*. Having made this stipulation, and then making no objection to the introduction of the penitentiary packet, we fail to see how any meaningful fact issue was ever created as to the truth of the enhancement paragraphs. *See Frazier v. State*, 15 S.W.3d 263, 267 (Tex.App.--Waco 2000, no pet.)(in light of prior convictions proven up with fingerprints, no error was shown in failure to give Article 37.07 instruction).

8

*The Parties' Arguments*

Under this factor, we look to whether any statements made by the State, Appellant, or the trial court exacerbated or ameliorated error in the charge. *See, Ngo*, 175 S.W.3d at 750. In *Ngo*, for instance, the court found egregious harm when the jury charge did not contain a unanimity instruction and the jury was repeatedly told it need not return a unanimous verdict. *Ngo*, 175 S.W.3d at 752. Appellant here focuses on the closing statement made by the State's prosecutor that purportedly invited the jury to answer the enhancement question true if it found at least two prior convictions from the several put into evidence.

The prosecutor did mention that there were more than two convictions, but she never told the jury that it could use any combination of convictions to answer the enhancement question. The prosecutor certainly discussed Appellant's prior charges, arguing that he had failed to learn from his prior mistakes and should be given a lengthy sentence. But for the enhancement question itself, she focused on the two particular charges denominated in that question. As she told the jury:

> The punishment Charge sounds incredibly complicated. It's really not. Basically what it's saying is if you believe that when he agreed to those prior two pen trips to the penitentiary were true, if you believe when he admitted it, then they're true. That's basically what that means.

At one juncture the prosecutor argued that there is "no evidence to say that those prior convictions aren't true, and they span a number of years from the '80s to as recently as 2007 when he was last sent." This statement might suggest that the jury could look to an early theft charge in the 1980s, but the prosecutor quickly followed up by saying: "But as complicated as this may sound, it really is basically saying, as long as you find at least two prior trips *that we've alleged* are true, then you don't need to concern yourself with the first verdict form and that first explanation." [Emphasis added].

9

Conversely, Appellant's counsel never disputed the two prior convictions as alleged in the enhancement paragraphs. In fact, in closing he stated: "I'm not going to get up here and lie to you . . . clearly we've stipulated that these things are true." Appellant's counsel asked for a minimum sentence, even specifically asking for the minimum sentence which attaches if there is one prior conviction. But he never developed any plausible argument that the State failed to prove the two prior convictions in the enhancement paragraphs.

*Other Considerations*

One other consideration informs our view on whether there was egregious harm. While the jury found the enhancement paragraphs true, it assessed the lowest punishment possible under the circumstances. The twenty-five-year sentence is the lowest in the range for a conviction where there are two prior qualifying convictions. TEX.PENAL CODE ANN. § 12.42(d). The jury also assessed no fine. This indicates that the jury was not swayed by the numerous other arrests and other charges which were admitted into evidence. *See Brown*, 45 S.W.3d at 232 (jury giving probation and minimal sentence suggests no egregious harm from omission of Article 37.07 instruction); *Tabor v. State*, 88 S.W.3d 783, 789 (Tex.App.--Tyler 20002, no pet.)(sentence well below what prosecutor asked suggests lack of prejudice even when Article 37.07 instruction was not given).

In summary, the only factor that weighs in favor of finding egregious harm is the omission of the instruction itself. All the other factors are neutral or support the lack of any harm. We conclude that there was no egregious error in this situation. *See Arrington v. State*, 451 S.W.3d 834, 845 (Tex.Crim.App. 2015)(finding no egregious error when the "evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm to appellant"); *Cosio*, 353 S.W.3d at 777-78

10

(no egregious harm when there were no factors outside of the charge itself); *Tabor*, 88 S.W.3d at 789; *Brown*, 45 S.W.3d at 232.  Accordingly, we overrule Issue One.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Issue Two, Appellant claims that his trial counsel's failure to have the trial court re-charge the jury with the Article 37.07 instruction denied him effective assistance of counsel.  To prevail on a claim of ineffective assistance of counsel, Appellant must satisfy a two-prong test by a preponderance of evidence showing that:  (1) his attorney's performance was deficient; and that (2) his attorney's deficient performance deprived him of a fair trial.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Chandler,* 182 S.W.3d 350, 353 (Tex.Crim.App. 2005).  Appellant must satisfy both *Strickland* components, and the failure to show either deficient performance or prejudice will defeat an ineffectiveness claim.  *Perez v. State,* 310 S.W.3d 890, 893 (Tex.Crim.App. 2010), *citing Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

When the prejudice prong of *Strickland* is dispositive of the ineffective claim, we need only address that prong on appeal.  *See Seamster v. State,* 344 S.W.3d 592, 594 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd); *My Thi Tieu v. State,* 299 S.W.3d 216, 225 (Tex.App.--Houston [14th Dist.] 2009, pet. ref'd)(it is unnecessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong), *citing Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069-70.  Under this second prong, Appellant must show that counsel's errors were so serious that they deprived him of a fair and reliable trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Perez,* 310 S.W.3d at 893 (to establish prejudice, the defendant must show a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different).

11

For the same reasons as noted in the Appellant's first issue, we find no prejudice from any failure in re-charging the jury. There was no serious dispute that Appellant had two prior felony convictions just as alleged in the enhancement charge. He stipulated to being the same person for which there were records documenting the convictions. And while his testimony reflected some confusion about the dates and specifics for one of the convictions, once shown the penitentiary packet, his recollection was refreshed and he acknowledged the conviction. Moreover, the jury's decision to assess the absolute minimum available sentence, and assess no fine, shows a lack of prejudice from the admission of the multiple other references to arrests and convictions found in the State's exhibits. *See Graves v. State,* 176 S.W.3d 422, 437 (Tex.App.-- Houston [1st Dist.] 2004, pet. struck)(because there was no prejudice in failure to give 37.07 instruction, there was no prejudice under *Strickland* for failure to ask for the charge). We overrule Issued Two and affirm the judgment of the trial court below.


May 13, 2015

            ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)